Habold J. Rothwax, J.
The defendants are charged with violating section 235.05 of the Penal Law, obscenity in the second degree. These cases have been joined by consent of the parties for the purposes of a motion to suppress and dismiss on the grounds that the arrests and the seizures of alleged obscene *890 material were unlawful. No search or arrest warrants were issued in any of the cases.
The cases have been submitted to the court without a hearing because there are, according to the parties, no factual issues in dispute. In each of the above cases it has been stipulated that a police officer entered the public area of a store during regular business hours; that while on the premises he examined, in their entirety, items that were displayed or offered for sale; that these included books, magazines, photographs and peep show and other films; that, upon concluding that the items were obscene, he seized six identical specimens or less of the offending material; that the arrest of the defendant immediately preceded or immediately followed the seizure; that, in relation to the items seized, there had been no prior judicial scrutiny and no warrant.
The issue thus posed is: may a police officer who is properly in a public area of a store lawfully seize, after observing in their entirety, six identical items .or less of material he believes to be obscene without prior judicial scrutiny and authorization.
It is clear, and not contested, that the State’s efforts to suppress obscene material will violate the First Amendment if the determination of obscenity which leads to suppression is made by a police officer without close judicial scrutiny and supervision. (A Quantity of Books v. Kansas, 378 U. S. 205; Marcus v. Search Warrant, 367 U. S. 717.)
The People contend, however, that those cases which have dealt with the requirement of prior judicial scrutiny have involved massive seizures of books, pictures and films, where the effect and the intent was prior restraint and complete suppression. They would distinguish the limited seizure for purposes of criminal prosecution because it does not preclude the continued dissemination and distribution of the offending items prior to a judicial determination of obscenity. The continued public access to the questioned materials, in their view, protects the free flow of ideas and First Amendment values, so no prior judicial scrutiny is necessary.
This distinction between massive and limited seizures is not always entirely clear. It cannot be gainsaid that where only one copy of a book or one print of a film is available, removal of that book or film from public distribution or showing will ordinarily pose a greater restraint on expression than where many copies or prints exist. In fact, such an action may approximate the stifling of expression which follows from a mass seizure of the type struck down in A Quantity of Books (378 U. S. 205, supra). The suggested differentiation may only encourage sellers of *891 questionable publications to send goods in single-copy lots and bookstores to display only single copies.
Massiveness does not, then, relate so much to the quantity seized as to the continuing availability of the product; to the public.
In Bethview Amusement Corp. v. Cahn (416 F. 2d 410 [2d Cir., 1969], cert. den. 397 U. S. 920) the court said at page 412: ‘ ‘ Appellants argue that there is a difference between the seizure of a large number of books and the seizure of a single print of a motion picture film. We do not agree that the difference is legally significant. We are told that the Bethview Theater has 300 seats. Assuming half of them to be occupied for four show-, ings of a film each day for a week, over 4000 individuals would see the film. Preventing so large a group in the community from access to a film is no different, in the light of first amendment rights, from preventing a similarly large number of books from being circulated. ’ ’
A similar breakdown and analysis could be directed at peep shows in bookstores.
In the form in which these cases have been submitted to this court there is no way of knowing whether all or only a part of the offending materials were seized. If this distinction between massive and limited seizures were crucial to the decision I would have to set each matter down for separate factual findings. Very often, though not always, the arresting officer will not be able to ascertain the number of copies in stock without trespassing upon areas closed to him. The People’s position would seem to require an inventory before a seizure and this will often be impossible or legally impermissible. I believe that the issues posed in this case may be resolved without reference to the validity of the distinction between massive and limited seizures and, therefore, I do not remand the case for further findings of fact.
A dominant theme of those Supreme Court decisions that have been concerned with the seizure of allegedly obscene material is that because the line between protected and unprotected speech is so difficult to draw we must have procedures “ before seizure designed to focus searchingly on the question of obscenity.” (Marcus v. Search Warrant, 367 U. S., at p. 732 [emphasis added]). State regulation of obscenity must “ conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line.” (Bantam Books v. Sullivan, 372 U. S. 58, 66).
*892 The New York Court of Appeals has been clear that the First Amendment requires prior judicial 'Scrutiny before any seizure of alleged obscene material.
In People v. Rothenberg (20 N Y 2d 35) the court said (at pp. 38-39): “ the confines of what is permitted as free speech under the First Amendment * * * cannot be left to the determination of police chiefs and patrolmen everywhere * # * if that were done there would be as many different standards of what constitutes obscenity as there are policemen * # * the power and duty of making that determination is conferred upon the courts rather than upon the police ’ ’.
In People v. Heller (29 N Y 2d 319) the court said (at p. 322), 1‘ the seizure of evidence as obscene, and arrests on this ground, should not be left to the judgment of policemen, but should have judicial supervision.” People v. Abronovits (31 N Y 2d 160) is to the same effect.
The People seek to avoid the impact of the above-cited cases by arguing, first, that judicial scrutiny is not required before an officer has probable cause to effect an arrest for promoting obscene material, especially in cases involving “hard-core” pornography, and second, that once a lawful arrest has been effected, a limited seizure of evidence may then be made, also without prior judicial scrutiny.
There are numerous difficulties with these arguments.
Initially, we must inquire whether the police officer, in this area, is entitled or lawfully permitted to make the probable cause determination.
Generally, the Fourth Amendment states a preference for warrants, with limited exceptions to be discussed below. Mr. Justice Jackson’s remarks, in speaking for the United States Supreme Court, in Johnson v. United States (333 U. S. 10,13-14) are well known: “ The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate’s disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity ”.
What was originally stated as a preference for arrest warrants (Beck v. Ohio, 379 U. S. 89 [1964]) has more recently been *893 referred to as a requirement ‘ ‘ that the police must, whenever practicable, obtain advance judicial approval of searches and seizures ” (Terry v. Ohio, 392 U. S. 1, 20 [1968], emphasis added). And in Davis v. Mississippi (394 U. S. 721, 728 [1969]), the court, in suggesting that a suspect might be briefly detained for fingerprinting on evidence insufficient for arrest, added that because there was no need for immediate action a warrant would be necessary under ‘ ‘ the general requirement that the authorization of a judicial officer be obtained in advance of detention Logic would also suggest that with the prohibition on warrant-less searches of premises incident to arrest, imposed in Chimel v. California (395 U. S. 752 [1969]), advance judicial approval should likewise be required when feasible for the equally or more severe step of depriving an individual of his freedom.
Beyond this, referring to the items seized as “ hard-core ” pornography, and thereby suggesting that it is contraband subject to seizure when in plain view or as an incident to a lawful arrest, does not assist the argument.
Initially, it must be said that what is “ hard-core ” pornography is not always clear and depends, in large degree, on one’s tastes, values and standards. Heller (29 N Y 2d 319, supra) and Rothenberg (20 N Y 2d 35, supra) have made it plain that those kinds of judgmental factors are not to be weighed by individual police officers. Bothenherg invalidated a search warrant which authorized a search for “hard core” pornography: “ The specifying of ‘ hard core pornography ’ is not enough to define specifically in a search warrant what the police are to look for and seize.” (People v. Rothenberg, 20 N Y 2d, at p. 39.)
If officers cannot make such a seizure with a warrant it is indeed difficult to see how such ¡a seizure without a warrant can be upheld. In Jones v. United States (362 U. S. 257) the Supreme Court, strongly supporting' the preference to be accorded searches under a warrant, indicated that in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.
Nor is it helpful to the People to analogize “hard-core” pornography with contraband. As the Supreme Court said in A Quantity of Books v. Kansas (378 U. S., at pp. 211-212): “ It is no answer to say that obscene books are contraband, and that consequently the standards governing searches and seizures of allegedly obscene books should not differ from those applied with respect to narcotics, gambling paraphernalia and other contraband, We rejected that proposition in Marcus.”
*894 That proposition was rejected in Marcus (367 U. S. 717, supra) because it did not adequately guard against the suppression of constitutionally protected publications.
Nor can the seizures in these cases be upheld under a “ plain view ” rationale. It is true that “ It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.” (Harris v. United States, 390 U. S. 234, 266.)
There is no question that in these cases the police were properly on the premises and that they properly observed and perused the items ultimately seized. There are, however, two limitations on the “ plain view” doctrine. The first of these is: “that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle # * * that no amount of probable cause can justify a warrantless search absent ‘ exigent circumstances ’ * * * even where the object is contraband. ” (Coolidge v. New Hampshire, 403 U. S. 443, 468 [emphasis in the original].)
The second limitation is that the discovery of evidence in plain view must be inadvertent. ‘ ‘ But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as " per se unreasonable ’ in the absence of ‘ exigent circumstances.’ ” (Coolidge v. New Hampshire, 403 U. S., at p. 470.)
Here, as in Goolidge, the determining factors are advance police knowledge of the existence and location of the evidence, police intention to seize it, and ample opportunity for obtaining a warrant.
The People also assert their right to search incident to a lawful arrest and urge that once a lawful arrest has been made, a limited seizure of evidence may then be had without prior judicial scrutiny. I have already rejected the contention that a lawful arrest without a warrant can be effected under the circumstances of these cases. I find, similarly, that search incident doctrine is not applicable to the facts in the cases before us.
It is a basic constitutional .rule that ‘ ‘ searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.” (Katz v. United States, 389 U. 8. 347, *895 357.) The exceptions are “jealously and carefully drawn,” (Jones v. United States, 357 U. S. 493, 499) and there must be “ a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.” (McDonald v. United States, 335 U. S. 451, 456.) “ The burden is on those seeking the exemption to show the need for it.” (United States v. Jeffers, 342 U. S. 48, 51.)
The search incidental to a lawful arrest is one of the few exceptions to the warrant requirement. Until recently, it could be said that the right to make a warrantless search incident to a lawful arrest was an exception which came close to swallowing up the search warrant requirement. This was because United States v. Rabinowitz (339 U. S. 56) permitted such searches, without regard to the practicality of obtaining a search warrant, both of the arrestee’s person and the premises where the arrest occurred. The Supreme Court in Chimel v. California (395 U. S. 752, supra) has now narrowed this exception by permitting search incident to arrest only of the arrestee’s person and areas within his immediate reach.
In Ch-imel, the court made it clear that the police must, whenever practicable, obtain advance judicial approval of searches and seizures (395 U. S., at p. 762). It plainly limited the search incident doctrine to those situations where, one, “it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape ” (395 U. S., at p. 763), and, two, it is “reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.” (395 U. S., at p. 763.)
The two situations discussed above are simply not present in any of the many cases now before the court. Nor can the People seriously contend that they provided the basis for the actions of the police officers in these cases. It cannot be maintained that any of these matters raise issues of the officer’s safety or that there was any' imminent threat that the evidence would be removed or destroyed. Quite the contrary. Indeed the People, in their brief, have asked the court to accept as “ facts of life ” that these bookstores simply continue to operate and treat the cost of prosecution, conviction and penalty as a routine business expense. I imagine that the People would welcome the removal and destruction of the evidence. Their concern, as these many cases demonstrate, is that the evidence remains.
*896 What we have here is a pattern of repeated arrests. One of the 54 defendants has been arrested 12 times; another, 11 times. One of the stores has been involved in 50 of the 134 cases now before the court. There can, under circumstances such as these, be little excuse for the failure to obtain a warrant. We deal with an ongoing problem. Time is not of the essence. There ib no exigency.
The People have argued that requiring prior judicial authorization in every case would result in an “ unnecessary ” expenditure of court time. I find the requirement a “ necessary ^ one and the argument not constitutionally cognizable. (Coolidge v. New Hampshire, 403 U. S., at p. 470.) In any event, if the People are concerned to save the court time “it is far easier for the police to purchase one copy of the charged writings, and then introduce it into evidence.” (Astro Cinema Corp. V. Mackell, 422 F. 2d 293,.295.) This affords the added benefit of obviating the necessity for a motion to suppress on the issue of search and seizure and expedites a decision on the merits.
In support of their contentions the People have cited a number of cases: (Milky Way Prods. v. Leary, 305 F. Supp. 288, affd. 397 U. S. 98; United States v. Wild, 422 F. 2d 34; Rage Books v. Leary, 301 F. Supp. 546; United States v. Fragus, 428 F. 2d 1211; People v. Matherson, 16 N Y 2d 509).
In Milky Way (305 F. Supp. 288, supra) the plaintiffs sought injunctive relief against State arrests and prosecutions for promoting obscenity. A three-Judge court simply held that there need not be an adversary hearing before an arrest for promoting obscene materials. The issue of the need for a prior adversary hearing is not presented by any of the matters now before this court. Apart from this, it appears that there were no seizures in Milky Way (305 F. Supp., at p. 296, n. 11). Nor, it should be noted, were there any arrests in Milky Way before a judicial officer had scrutinized the materials and determined that warrants should issue (395 F. Supp., at p. 296)..
In Wild (422 F. 2d 34, supra) the arrests of the appellants Were made pursuant to bench warrants which issued upon their indictment, and the lawfulness of their arrests was not questioned. Beyond this, although Wild was decided after Chimel (395 U. S. 752, supra), it arose prior to that case, and since Chimel had only prospective application the court (422 F. 2d, at p. 38) upheld the search under Rabinowitz (339 U. S. 56, supra). Obviously Chimel is applicable in the cases before this court.
*897 In Rage Books (301 F. Supp. 546, supra) the_plaintiffs sought an injunction against future arrests and seizures if made without a prior judicial determination of obscenity upon an adversary proceeding. Again, prior adversary hearings are not here in issue. Dicta in the case supports the People’s position, but this court does not feel bound by the latter. GMmel and GooUdge followed Rage Boohs and are deemed controlling.
In Fragus (428 F. 2d 1210, supra) the materials involved were in packages or bags moving in interstate commerce. “ They had neither a character nór a knowable content which would physically permit a pre-seizure adjudication such as can reasonably be accomplished when the subject matter is an identifiable, obtainable circulated book or magazine or a movie exhibited in a public theater.” (United States v. Fragus, 428 F. 2d, at pp, 1212-1213.)
In Matherson (16 N Y 2d 509, supra) there was prior judicial scrutiny of the offending book. The officer had purchased a copy and submitted it to a Judge with an affidavit for a search warrant and the Judge issued the warrant only after further questioning of the officer. Though the warrant was defective because it was too general, the court upheld the conviction because the evidence upon which it was based was properly obtained: the officer purchased the book and submitted it to a Magistrate who found it óbscene; the arrest which followed was, therefore, as to that item, lawful.
In short, the People’s cases do not support their contentions. It is difficult to conceive of a situation which, would provide more time and opportunity to obtain a warrant than the one presented by these cases. When we combine that Fourth Amendment consideration with the many First Amendment expressions that officers cannot be properly entrusted with the task of determining what is obscene, it becomes clear that prior judicial scrutiny is constitutionally required.
“ The warrant requirement has been a valued part of our constitutional law for decades * * * It is not an inconvenience to be somehow ‘ weighed ’ against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the. ‘ well-intentioned but mistakenly over-zealous executive officers ’ who are a part of any system of law enforcement.” (Coolidge v. New Hampshire, 403 U. S., at p. 481.)
The motion to suppress is, in each of the matters before the court, granted.