THE CITY OF CHICAGO *et al.*, Plaintiffs-Appellants, *v.*
MELODY HANSON *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-0482

Opinion filed December 31, 1981.—Modified on denial of rehearing May 21, 1982.

1018

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Joel A. Stein, Assistant State's Attorneys, of counsel), for appellants.

Patrick A. Tuite, of Chicago, for appellees.

JUSTICE WILSON delivered the opinion of the court:

The State appeals from an order of the trial court suppressing all evidence in the pending matter in which defendants were charged with public indecency, obscenity, and keeping a disorderly house. (Ill. Rev. Stat. 1977, ch. 38, pars. 11—9(a)(2), 11—20, and Municipal Ordinance 193(2).) On appeal, pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(a)(1)), the issue for review is whether the trial court erred in suppressing the evidence in this matter, as the alleged misconduct was not entitled to first amendment constitutional protections. The pertinent facts follow.

Defendants Hanson, Gomez and Bowman were charged by complaint with obscenity and public indecency. Defendants Liang and Howard were charged by complaint with keeping a disorderly house, and Liang was additionally charged with obscenity. Hanson, Gomez, Liang and Owens were arrested on July 26, 1978, after Hanson and Gomez were observed performing cunnilingus on each other, and Hanson, Bowman and Howard were arrested on August 23, 1978, after Hanson was observed performing an act of fellatio on Bowman. Defendants moved to suppress evidence in the case on the grounds their arrests were effected without a warrant. They alleged their conduct was protected by the first amendment of the United States Constitution and could not be restrained without a warrant or prior judicial determination.

On February 9, 1979, a hearing was held on defendants' motion to suppress. The stipulated facts indicate that on August 23, 1978, Officer George Carey paid a $5 admission fee to enter the Festival Theatre. Hanson appeared on stage, talked with the audience for approximately

five minutes, began to dance to music while simultaneously removing her clothes. A short time later, Carey observed her lying nude on a rug with her genitals exposed to the audience and "simulating"[1] the touching of her organs.

Hanson was then joined by Bowman, who was dressed in briefs, a T-shirt and a cape. He "simulated" sexual intercourse and oral sex upon her. Carey would testify that he observed Hanson "simulate" fellatio on Bowman.

A further "simulated" intercourse took place between Hanson and Bowman; thereafter, Hanson got dressed, talked to the audience and asked them to sign her petition for the freedom to observe particular live performances. Carey then arrested Hanson, Bowman and Howard. It was further stipulated that there had been no arrest warrant issued for the arrest of any of the performers, nor had there been prior judicial scrutiny of any of the performances.

Defendants argued that their arrest was illegal as nude dancing is protected by the first amendment and the question of whether the dance was obscene is a constitutional question requiring a judicial determination and an arrest warrant.

The court found that a live performance is entitled to identical protection of the first amendment as a film and as such there should have been an application for an arrest warrant. This appeal follows.

Opinion

We are asked to consider whether the trial court properly suppressed all evidence of defendants' conduct. The State argues that defendants were arrested only after a Chicago police officer observed Hanson and Bowman engaged in sexual intercourse, cunnilingus and fellatio. Further, the arrest of defendants is not equivalent to a seizure of film.

■■ It is well settled that a police officer may effect an arrest without a warrant if the officer has probable cause (Ill. Rev. Stat. 1979, ch. 38, par. 107—2); where he believes that a criminal offense has been committed in his presence and the person arrested committed it (*People v. Schwing* (1971), 133 Ill. App. 2d 100, 272 N.E.2d 779; *People v. Accardi* (1965), 58 Ill. App. 2d 364, 208 N.E.2d 43). Whether reasonable cause exists depends upon the "factual and practical considerations of everyday life upon which reasonable men, rather than legal technicians, act." (*People v. Johnson* (1979), 71 Ill. App. 3d 143, 148, 388 N.E.2d 1320.) We believe a resolution of this matter requires an analysis of the basis of the charges involved here.

---

[1] Although reference is made to the conduct involved here as "simulated," our review of the record demonstrates actual intercourse occurred and defendants performed actual oral sex.

■■ Defendants were charged with public indecency proscribed by section 11—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 11—9). They were arrested only after Officer Carey observed Hanson and Bowman "simulating" sexual intercourse and oral sex in his presence at the theatre. These acts are specifically proscribed by the statute. Under these facts defendants were properly arrested and testimony as to this charge should not have been suppressed.

With regard to the obscenity charge, defendants argue that live shows, even those including nude dancing, are protected by the first amendment. Nude dancing is a form of expression which is protected by the first amendment. (*Jamaica Inn, Inc. v. Daley* (1977), 53 Ill. App. 3d 257, 368 N.E.2d 589, *rev'd on other grounds* (1978), 72 Ill. 2d 415, 381 N.E.2d 694.) However, whether the conduct in question here is entitled to this protection is not a determination we need to make now as the issue on appeal is suppression of all evidence relating to this charge. The issue of whether the conduct involved here is obscene must be tested by the standards of *People v. Ridens* (1972), 51 Ill. 2d 410, 282 N.E.2d 691, *aff'd on remand* (1974), 59 Ill. 2d 362, 321 N.E.2d 264; *People v. Gould* (1978), 60 Ill. 2d 159, 324 N.E.2d 412.) Those standards require that the material be regarded as a whole (*City of Chicago v. Festival Theatre Corp.* (1980), 88 Ill. App. 3d 216, 410 N.E.2d 341, appeal pending) with the view that expression that is sexually oriented, but not obscene, is entitled to first amendment protection. (*City of Rolling Meadows v. Kohlberg* (1980), 83 Ill. App. 3d 10, 403 N.E.2d 1040.)[2] The Supreme Court has stated in *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 557, 43 L. Ed. 2d 448, 458, 95 S. Ct. 1239, 1246, that "[e]ach medium of expression, of course, must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems." (420 U.S. 546, 557, 43 L. Ed. 2d 448, 95 S. Ct. 1239, 1246.) Ultimately, a determination of what constitutes obscenity is a matter within the province of the court. *People v. Better* (1975), 33 Ill. App. 3d 58, 337 N.E.2d 272.

■■ In the pending matter, the police officer arrested defendants and charged them with obscenity *after* he observed an "obscene" performance presented and defendants participating therein. He reasonably believed he witnessed a violation of our criminal statute at that particular time. Live performances present particularly difficult problems as they may be altered from day to day from legitimate to illegitimate expressions. (*City of Chicago v. Festival Theatre Corp.*) As such, an evaluation of a live performance's contents can only be made at the time of the

---

[2] We note that *City of Rolling Meadows v. Kohlberg* recites the criteria expressed in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607. This case is at variance with the criteria enumerated in *People v. Ridens* and *People v. Gould.*

particular instance in question, since we cannot predict what conduct will be legally obscene or presume that future expressions are obscene. (*City of Chicago v. Festival Theatre Corp.* (1980), 88 Ill. App. 3d 216, 410 N.E.2d 341, *appeal pending.*) The police officer's evaluation of this situation is by no means determinative of a conviction, and cannot be solely relied on by a judicial officer in making a determination as to its obscenity. (*Piepenburg v. Cutler* (10th Cir. 1981), 649 F. 2d 783.) It is but a factor in the evidence as the conduct must be regarded as a whole applying contemporary standards by the trier of fact to determine (a) whether the average person would find that the work taken as a whole, appeals to the prurient interest; (b) whether the work depicts or described, in a patently offensive way, sexual conduct specifically defined by the applicable statute or ordinance; and (c) whether the work is utterly without redeeming social value. (*People v. Ridens; People v. Gould.*) We again reiterate, a determination of whether this conduct is obscene is really not the issue before us. We are only concerned as to whether the police officer's observations *before* the arrests can be suppressed and we hold they cannot, as his observations are not conclusive on any obscenity issue here. Defendants still are entitled to their day in court on this charge and can present whatever evidence they have to refute this charge.

The trial court's rationale in sustaining defendants' motion, and defendants' attempted analogy of their conduct to film entitled to constitutional protections confuses the real issue in question. The trial court found that defendants' acts were "a continuing type of thing" a "live performance" entitled to first amendment protection as a film and concluded that a warrantless arrest of defendants amounted to prior restraint. However, some evaluation of a live performance must be made at each instance because of its capacity to change, unlike the permanent qualities of celluloid. This evaluation by a police officer is only related to charge a violation, as any other criminal activity is evaluated. It is not conclusive or a final determination of the matter.

Moreover, no prior restraint issue is involved as arrests can only be made *after* an observation of criminal activity takes place, and thus again each live performance must be evaluated for its content. There is no conclusive evidence in this case that future performances or the operation of the theatre was impeded. Our hostility to an imposition of a prior restraint in this instance would militate against its constitutional validity under these circumstances.

We believe the situation in this instance is analogous to the situation in *People v. Better* (1975), 33 Ill. App. 3d 58, 337 N.E.2d 272, where defendants were charged with obscenity after State witnesses observed them fondling their breasts and vaginal area while dancing. We held that the mere arrest and prosecution of those charged with obscenity did not

necessitate a prior judicial determination of obscenity. (*People v. Ridens.*) In *Better*, as in the instant case, there was no interruption with the post-arrest operation of the facility, thus no suppression of possibly protected speech.

Defendants rely on a number of cases involving seizure of film, or other materials, *i.e.*, *Roaden v. Kentucky* (1973), 413 U.S. 496, 37 L. Ed. 2d 757, 93 S. Ct. 2796; *Marcus v. Search Warrant* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708; *A Quantity of Copies of Books v. Kansas* (1964), 378 U.S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723; *Walter v. United States* (1980), 447 U.S. 649, 65 L. Ed. 2d 410, 100 S. Ct. 2395; *City of Rolling Meadows v. Kohlberg*; *People v. Sparks* (1974), 24 Ill. App. 3d 247, 321 N.E.2d 22. However, the permanent nature of celluloid and other written materials facilitates a prior judicial determination of obscenity, unlike a live performance with a capacity to be altered continuously and thus can move in and out the realm of illegitimacy. No authority is cited nor can we surmise that a warrantless arrest of a person after he is observed committing a crime amounts to prior restraint. The extension of defendants' position would seem untenable.

Finally, defendants' reliance on *Southeastern Promotions, Ltd. v. Conrad* is also inapplicable in the present case. In *Southeastern Promotions, Ltd.*, petitioner, a promotor of theatrical productions, applied to members of a municipal board charged with managing a city auditorium and a city-leased theatre, to present the musical production "HAIR" at the theatre. The board rejected the application upon the basis of outside reports which concluded that the production would not be "in the best interest of the community." Petitioner sought injunctive relief, and after several months the board filed its first responsive pleading. After a hearing on the content of the musical, the District Court concluded that the production contained obscene conduct not entitled to first amendment protection. The Supreme Court concluded that a system of prior restraint " 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.' *Freedman v. Maryland*, 380 U.S. 51, 58 (1965)." (420 U.S. 546, 559, 43 L. Ed. 2d 448, 459-60, 95 S. Ct. 1239, 1247.) Safeguards included judicial review proving the material is unprotected with the burden on the censor; any restraint can only be for a specified brief period and only to preserve the status quo; and a prompt judicial determination must be assured. The safeguards were lacking here since the denial of the use of the municipal facilities for the production were based on the board members' judgment of its content and they relied on outside reports. Thus, the denial constituted an unconstitutional prior restraint. Unlike *Southeastern Promotions, Ltd.*, in the pending case a police officer personally observed the performances, and further, the operation of the

theatre has continued uninterrupted pending a judicial outcome of the criminal violations.

As defendants' arguments relating their conduct to prior restraints on films, books and other material must falter, so must their contention that the conduct of police officers was a restraint upon the future performances of the Festival Theatre. As we indicated earlier, an evaluation of criminal activity is by no means conclusive as to its final determination on the trier of fact, for it is only one factor to consider among all the evidence. As such, we are not denying defendants their first amendment rights, we are in fact championing their rights because we will not allow a system of prior restraint without procedural safeguards. Our determination here as to the impropriety of the trial court's order suppressing the police officer's observations prior to the arrests should not be construed as a judgment on the legitimacy or illegitimacy of defendants' conduct. A judicial determination must still be made on the performances in question and is not conclusive as to future live performances.

For the foregoing reasons, we reverse the order of the trial court suppressing the evidence, and remand this matter for a hearing and a determination on the charges and for such other proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.