OPINION OF THE COURT
Jeffrey M. Atlas, J.
The defendant, it is alleged, violated section 235.05 of the Penal Law by giving an obscene performance in New York County on September 24, 1981. The complaint alleges only that the defendant intentionally performed an obscene act before a live paying audience “in that the defendant did manipulate her genitals before said audience.”
Prior to defendant’s arrest, the police failed to obtain a determination by the court as to the obscene character of the performance. The defendant moves to dismiss the complaint, contending that the failure of the police to obtain “judicial scrutiny” prior to arrest bars further prosecution of this case.[1]
The issue is of substantial importance, not only to this defendant but also to the police, courts, and performers; a finding of inadequacy in police procedures will have a bearing upon the conduct of all parties in the future; *774 resolution in favor of defendant might deter future police conduct claimed as violative of the First and Fourteenth Amendments to the Constitution.
The defendant’s contention that the arrest of the defendant should have been preceded by an examination by the court of the content and character of the performance really raises two important issues: first, whether such an examination should have been conducted; and, second, what, if anything, may now be done about it?
I
I am of the opinion that scrutiny by the court, prior to the arrest of the performer, of the nature of the performance sought to be charged by the police as obscene is a necessary predicate to prosecution of this case.
The police may not act as unsupervised censors of modes of expression which may be constitutionally protected; nor may the police adopt procedures for the enforcement of statutes prohibiting obscenity by which they assume the role of unsupervised censors of such expression and speech.
“The existence of the State’s power to prevent the distribution of obscene matter does not mean that there can be no constitutional barrier to any form of practical exercise of that power.” (See Smith v California, 361 US 147, 155.)
At least since Marcus v Search Warrant (367 US 717), the State has been denied the unfettered discretion to seize material that it alone has determined is obscene. Such broad and indiscriminate power has been held as obviously deficient in techniques required by the due process clause of the Fourteenth Amendment to prevent erosion of constitutional guarantees[2] (see Marcus v Search Warrant, supra).
“ ‘[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed or punished is finely drawn ... The separation of legitimate from illegitimate speech calls for ... sensitive tools ...’ Speiser v. Randall, 357 U.S. 513, 525. It follows that, under the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with *775 obscenity as here involved without regard to the possible consequences for constitutionally protected speech.” (See Marcus v Search Warrant, supra, p 731.)
There exists a heavy presumption against the constitutional validity of any system of prior restraint of expression. Over and over again we have been reminded that procedures for restraining the display and publication of obscene material have been tolerated only where they operated under judicial superintendence and an assurance of an almost immediate judicial determination of the validity of the restraint (see Bantam Books v Sullivan, 372 US 58, 70).
More specifically, systems established or utilized by the State which restrain forms of expression prior to adequate judicial review and scrutiny have regularly been held unlawful. In fact our courts have suppressed allegedly obscene material which was seized without first having afforded the court an opportunity to focus searchingly on the question of obscenity (see Roaden v Kentucky, 413 US 496, 506).
The District Attorney argues that the decisions through which these principles evolved dealt exclusively with prior unlawful restraints upon the publication and sale of books and film and are therefore not applicable to live performances.
Live performances, however, are no less a mode of expression or speech than books or film; live performances are entitled, no less than books or film, to the same protection of the First and Fourteenth Amendments against unlawful censorship. (See Doran v Salem Inn, 422 US 922.)[3]
Surely, it is well settled that live performances, contended as obscene, are to be judged by current standards devised under the First Amendment (see Penal Law, § 235.00 which represents a legislative acknowledgment that all performances are presumptively protected by the *776 First Amendment). It is unreasonable to hold that condemnation and censorship of such performances must be adjudicated by one set of First Amendment rules but not be entitled to the benefits of a corollary set of rules governing preadjudicative censorship. Live performers may be unfairly restrained by arrest not only from completing an ongoing performance but from performing again in the near future following arrest. Arrest effectively discourages not only the performer but his or her producers and patrons from allowing the same or similar performances to take place again. In short, the right to arrest a performer, unfettered by judicial review, could certainly succeed as a form of censorship which is prohibited by the Constitution and which is, of course, the subject of our mutual distaste (see Attwood v Purcell, 402 F Supp 231). It is almost preposterous to believe that systems of censorship prohibited by our Constitution as to book publishers and film producers ought not be prohibited as to our dancers, actors and comedians.
The District Attorney also contends that the arrest of this defendant was constitutionally valid, since the arresting officer had reasonable cause to believe that the defendant had committed the crime of obscenity in his presence. This argument provides no obstacle to the application of the rule requiring judicial scrutiny prior to arrest. Indeed, our own CPL 140.10 must be read together with and in light of the rules designed to protect against unlawful censorship. In fact, an arresting officer’s own belief as to the obscene character of a performance cannot be “reasonable” as that term is used in CPL 140.10. Simply put, a police officer, under all existing case law is denied the competence to act as censor; his belief that the crime of obscenity has been committed is, as a matter of law, unreasonable. In the absence of judicial review, an arrest for that crime is unlawful. (See Marcus v Search Warrant, 367 US 717, supra; A Quantity of Books v Kansas, 378 US 206; Roaden v Kentucky, 413 US 496, supra; People v Heller, 29 NY2d 319; People v Avasino, 71 Misc 2d 889.)
Finally, the District Attorney argues that practical difficulties, or what might best be described as “exigencies” prevent the application to this case of the rule requiring *777 prior judicial scrutiny. (See Roaden v Kentucky, supra, p 505.)
There are however no exigencies here which might interfere with the application of these fundamental principles.
First, there is no likelihood in cases of this kind that evidence will be lost or destroyed during the pendency of court review. Moreover, during that period, there is considerably less fear that the defendant will abscond than that she will again perform in a similar manner.
Second, there is no merit in the contention that the rules requiring judicial evaluation before arrest are impossible to apply simply because live performances are generally inaccessible to Judges for viewing and may change in some measure by the time a Judge is able to view it. (See 206 East 52nd Rest. Corp. v City of New York, 86 Misc 2d 1048, and People v Morgan, 86 Misc 2d 377, relied upon by the People in this contention.)
It simply does not follow that judicial examination of available evidence of obscenity as a predicate for arrest in these cases requires the court to be a witness to the very performance contended as obscene. In cases in which books and films were the subject of prosecution our courts have generally required scrutiny of the books and films themselves. This is so since the real evidence of obscenity in those cases was to be found in the books and films in question. As to unfilmed and unrecorded live performances, the People can only advance as evidence of obscenity the testimony of police and civilians who have viewed the entire performance. It is sufficient in such cases for the court to pass upon the available evidence of obscenity in determining probable obscenity. Such a procedure, enhanced by affidavits, and testimony when necessary, is one which reasonably assures appropriate scrutiny and, of course, is one with which the court is not unfamiliar. In these cases, as in cases where search warrants have been required, it is relatively simple to satisfy the needs of law enforcement while prohibiting unnecessary encroachments on essential liberties. Maintaining such a balance does not require the court to become a witness to the acts *778 alleged as criminal (see Lee Art Theatre v Virginia, 392 US 636, in which the Supreme Court specifically declined to mandate viewing of a film by the magistrate, requiring only that the procedure to be followed must be designed to focus searchingly on the question of obscenity).
THE REMEDY
The defendant urges me to dismiss these cases.
It is my view that, in the absence of a sure and powerful remedy the State and its municipalities will feel free, if not encouraged, to ignore these constitutional safeguards in the future. Indeed, defendant’s contention is that more is at stake here than the defendant’s right to perform — though enforcement of that right alone is sufficient to justify dismissal. The right, if not the need, of the public to benefit by constitutionally protected speech is also at issue and must also be preserved against untoward efforts at censorship.
The problem, of course, is that, unlike those cases which dealt with seizure of books and films, the exclusionary rule cannot apply here.
The defendant has also urged that I suppress the testimony of the arresting officers. In this she adopts the exclusionary rule applied in earlier cases dealing with the seizure of obscene books and films. There is no logical basis upon which to apply this remedy since the anticipated testimony of the officers concerns lawfully made observations of a live performance — and not unlawfully obtained evidence.
The District Attorney has urged, on the other hand, that even if the police conduct at issue was unlawful, dismissal cannot follow. Focusing exclusively on the unlawful arrest of the defendant, the District Attorney argues that our courts have declined to prevent prosecution even where they were initiated by an unlawful arrest (see, e.g., Albrecht v United States, 273 US 1; Stallings v Splain, 253 US 339; People v Grant, 16 NY2d 722; Matter of Lurie v District Attorney of Kings County, 56 Misc 2d 68).
The defendant, however, does not contend that this action must be dismissed simply because the defendant has been unlawfully arrested. Indeed, were that the only *779 ground asserted for dismissal I might be constrained to agree with the prosecution (see Matter of Lurie v District Attorney of Kings County, supra).
The condemnation of police conduct here includes but is broader than an apparent violation of the defendant’s Fourth Amendment protections. Significantly, earlier Supreme Court decisions which required judicial scrutiny prior to police action in obscenity cases make clear that what is at stake is the application of due process principles under the Fourteenth Amendment in an effort to prevent erosion of the constitutional guarantees of the First Amendment. This approach may also include Fourth Amendment considerations but it does not oblige me to view it solely as a Fourth Amendment problem requiring application of its particular remedies (see and compare Marcus v Search Warrant, 367 US 717, supra, with Roaden v Kentucky, 413 US 496, supra). To perceive this as simply being another issue of contended unlawful arrest is far too simple an approach. We cannot allow ourselves, by such neat distinctions, to condone, in the future, procedures which inevitably encroach on First Amendment protections.
In short, continued efficacy of principles of the First Amendment and the due process clause of the Fourteenth Amendment is at stake. These principles are far too fundamental and significant to the defendant and to the public at large to trivialize them by holding that such violations cannot be remedied in this court.
I hold, therefore, that the failure of the police to obtain judicial evaluation of the nature and character of defendant’s performance prior to the defendant’s arrest for obscenity violated the defendant’s rights afforded by the First and Fourteenth Amendments of the United States Constitution (see Marcus v Search Warrant, 367 US 717, supra). The motion to dismiss the complaint is granted (see CPL 170.30, subd 1, par [fj).

. The defendant’s motion is part of an omnibus motion made on her own behalf and on behalf of numerous other defendants represented by the same counsel and facing similar if not identical charges arising from a series of arrests directed at theatres in the 42d Street area of the city.

. The First Amendment to the United States Constitution, in pertinent part, provides: “Congress shall make no law * * * abridging the freedom of speech”.

. Performances also, if not independently, benefit from protection given by section 8 of article I of the New York State Constitution. For an interpretation of that provision which, by itself, might well provide relief to this defendant, see Bellanca v New York State Liq. Auth. (54 NY2d 228).