[No. 43409-8-I.    Division One.    September 27, 1999.]

NICK FURFARO, ET AL., *Appellants*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

*Gilbert Henry Levy*; and *P. Cameron De Vore* and *Kraig L. Baker* of *Davis Wright Tremaine*, for appellants.

*Stephen Powell Larson* and *David Jerome Onsager* of *Stafford Frey Cooper*, for respondents.

BECKER, J. — The First Amendment protects nonobscene nude dance performances in an adult nightclub. Before making arrests for violations of a standards of conduct ordinance that prohibits stage dancers from sexual self-touching during a performance, a municipality must obtain a judicial determination of probable cause in which the court is able to focus searchingly on the question of obscenity. Without a warrant, such arrests operate as a prior restraint and a form of unconstitutional censorship. The appellants' federal civil rights damage claim is reinstated and allowed to proceed on the theory that their warrantless arrests were a constitutional deprivation as a matter of law.

## SUMMARY

On the afternoon on November 20, 1995, Seattle police went to Rick's, an adult nonalcoholic nightclub in Seattle operated by JJR, Inc. under an adult entertainment license issued by the City of Seattle. Without first obtaining a warrant, they arrested thirteen entertainers and the club manager, Nick Furfaro, for misdemeanor violations of Seattle's standards of conduct ordinance for adult entertainment establishments. The police required the dancers to change clothes and hand over their costumes as evidence. Afterwards, the dancers were handcuffed and transported to the King County Jail. Furfaro closed the club temporarily while the police processed the arrests.

The City tried one of the dancers in Seattle Municipal Court on July 15, 1996. A jury acquitted her. The City then dismissed the charges against the other defendants.

Furfaro and two of the dancers, Brandy Kidder and Esmerelda Silva, then sued the City and several individual

police officers for damages. They also sought injunctive and declaratory relief to prevent the defendants from continuing to deprive them of rights protected by the federal and state constitutions. Ruling on pretrial motions for summary judgment, the trial court rejected as a matter of law the plaintiffs' assertion that the failure of the police to obtain a warrant for the arrests made the arrests unlawful. The court held that the individual police officers were entitled to qualified immunity. The court allowed a jury to decide whether the police had probable cause to arrest the plaintiffs for violating the standards of conduct. The jury found the police did have probable cause. The trial court entered a judgment on the verdict. Appellants moved for judgment as a matter of law or, in the alternative, a new trial. They reasserted their argument that a warrant was required. The trial court denied the motion, and this appeal followed.

In this appeal, only the appellants' claim for damages under the federal civil rights statute, 42 U.S.C. § 1983, is at issue. The trial court dismissed all state law tort claims due to the appellants' failure to comply with the claim filing requirement of RCW 4.96.020(4), a ruling to which they have not assigned error. The trial court found that the plaintiffs' requests for injunctive and declaratory relief under the state constitution remained viable despite noncompliance with the claim-filing statute, but nevertheless dismissed claims for injunctive and declaratory relief under both the state and federal constitutions along with all other claims in the judgment of dismissal entered after the trial.

The order denying the motion for a new trial was predicated upon a ruling of law. Therefore, no element of discretion is involved and our task as an appellate court is to determine whether applicable legal principles support the trial court's ruling. *See Sweek v. Municipality of Metro. Seattle*, 45 Wn. App. 479, 482, 726 P.2d 37 (1986).

We conclude that the police should have first obtained a warrant for the arrests, and that the plaintiffs were entitled

as a matter of law to an instruction that the warrantless arrest was a deprivation of their rights under the United States Constitution. Because the trial court's erroneous pretrial ruling that no warrant was necessary shaped the rest of the trial to the prejudice of the appellants, we reverse the judgment of dismissal and remand for a new trial.

## BACKGROUND

Rick's has two stages for nude dancing. The stages are eighteen inches off the ground and six feet from the nearest customer as required by the ordinance, SEATTLE MUNICIPAL CODE (SMC) 6.270.100(A)(1), and are surrounded by flashing lights. The entertainers wear costumes usually consisting of a bra and panties. The music is prerecorded. A disc jockey in a booth announces which entertainer will be performing on stage. The entertainers perform in rotation, going from one stage to another. Each stage performance typically lasts two to three minutes and consists of a rhythmic dance routine including a strip-tease. Entertainers can earn money if their stage dances inspire patrons to request and pay for individual table dances. Entertainers may not mingle with patrons while in a state of undress, and may not at any time engage in any type of sexual conduct or fondling with other persons. SMC 6.270-.100(A)(3), (4), and (5).

The section of the ordinance under which Kidder and Silva were arrested prohibits entertainers from touching their private areas or simulating intercourse, masturbation, and other sexual acts. SMC 6.270.100(A)(2). The section under which Furfaro was arrested makes managers responsible for the dancers' violations. SMC 6.270-.100(A)(12). On the afternoon of the arrests, a detective spent about an hour in the nightclub as part of a planned undercover police operation targeted at the stage dancers at Rick's. His assignment was to watch the stage dancers and look for behaviors that violated the Seattle ordinance, specifically breast and genital touching and simulated masturbation. Neither the detective nor any other officer

involved in the operation was directed to evaluate the performance as a whole or to make any judgment about whether it was obscene.

Observing the stage dances inside the club, the detective covertly tape-recorded his observations. He described an entire rotation of fourteen dancers, noting for each one her stage name, a description of her costume, and the conduct violations he observed. He reported on the first two dancers, for example, as follows:

> Gabrielle on the main stage black sparkling string bikini. She touched her anus, buttocks, massaged her breasts. Gabrielle has long brown hair, slightly on the heavy side.

> Silver is on the main stage. She is wearing white t-bar panties, white silky top. She has short blonde hair and a tattoo on her left upper arm and one on her left calf. She just massaged her breasts, pinched her nipples and is now massaging her vagina.

The detective later testified in the criminal trial of one of the entertainers that each instance of self-touching he observed lasted two or three seconds. He described the performances as "dances" and said he found little difference between one dance and another.

After recording his observations, the detective left the club and met with other police officers to match the dancers with their entertainment licenses. Later that day, after deciding that thirteen of the dancers observed by the detective had engaged in conduct prohibited by the ordinance, the police returned and made the arrests. The City took one case to trial. After the trial ended with a jury verdict acquitting the dancer, the City dismissed charges against the other defendants, and the plaintiffs instituted the suit that is the subject of this appeal.

## WARRANT REQUIREMENT

Because of the risk of prior restraint and censorship, the First Amendment imposes special constraints on searches

for and seizures of materials that are presumptively protected as expression. *Marcus v. Search Warrants*, 367 U.S. 717, 731-32, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961). Recognizing the complexity of the obscenity test, the United States Supreme Court has held that a warrant to seize allegedly obscene published materials may not be issued based merely on a police officer's conclusory assertion that the content is obscene, but must be sufficiently particularized to enable the issuing magistrate to "focus searchingly on the question of obscenity." *Id.* at 732; *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873-74, 106 S. Ct. 1610, 89 L. Ed. 2d 871 (1986). Whether a seizure of materials that are presumptively protected under the First Amendment is reasonable under the Fourth Amendment must be examined in the light of the values of freedom of expression. For this reason, the government may not seize a film from a commercial theater regularly open to the public without first obtaining a warrant. Such a seizure is unreasonable, "not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness." *Roaden v. Kentucky*, 413 U.S. 496, 504, 93 S. Ct. 2796, 37 L. Ed. 2d 757 (1973).

The Supreme Court has not yet decided whether a warrant requirement similarly applies to arrests of persons for activities arguably protected by the First Amendment. In *Maryland v. Macon*, 472 U.S. 463, 465-66, 105 S. Ct. 2778, 86 L. Ed. 2d 370 (1985), a clerk in an adult bookstore appealed his conviction for distributing obscene materials. The police had arrested him without a warrant after purchasing two magazines and concluding they were obscene. The Supreme Court decided that the purchase of magazines was not a seizure. Assuming without deciding that the warrantless arrest was an unreasonable seizure, the Court held that the magazines did not have to be excluded from the evidence at trial because they were already legitimately in the hands of the police when the arrest occurred. "We leave to another day the question

whether the Fourth Amendment prohibits a warrantless arrest for the state law misdemeanor of distribution of obscene materials." *Macon*, 472 U.S. at 471.

■ A question similar to the one left open in *Maryland v. Macon* is now before this court. Live performances are entitled, no less than books and film, to the same protection of the First and Fourteenth Amendments against unlawful censorship. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932-33, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975). Although public nudity is conduct that has no constitutional protection, the First Amendment protects the communication and expression of a nude dancer. *O'Day v. King County*, 109 Wn.2d 796, 803, 749 P.2d 142 (1988). Topless entertainment in adult nightclubs and barroom nude dancing are forms of expressive conduct that enjoy some degree of constitutional protection. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991); *BSA, Inc. v. King County*, 804 F.2d 1104, 1106-07 (9th Cir. 1984); *Chase v. Davelaar*, 645 F.2d 735, 737 (9th Cir. 1981). Because the nude stage performances at Rick's were presumptively protected by the First Amendment, the appellants (collectively, Furfaro) contend the warrant requirement as established in *Marcus* and *Roaden* is equally applicable to their arrests as a means to secure a judicial determination of obscenity.

The City's response attempts to sidestep the concept of obscenity. In the City's analysis, the police arrested the dancers solely on account of their conduct, not because their expression was obscene. The City starts from the premise that nude conduct has no constitutional protection. *See O'Day v. King County*, 109 Wn.2d at 803. The City then misconstrues *O'Day* as creating for police the opportunity to decide whether they are arresting stage dancers for conduct or for expression. According to the City, the question of obscenity does not arise unless it becomes necessary to decide whether expression is obscene or not, and that necessity does not arise so long as the police are clear that they are arresting only for conduct. The City thus

strives to maintain, for purposes of establishing probable cause to arrest, a bright-line categorical barrier between the concepts of "conduct" (no consideration of obscenity required) and "expression" (must be separated into "obscene" and "nonobscene").

■ In *O'Day v. King County*, our Supreme Court held with respect to a similar ordinance that the standards of conduct by themselves are "overly broad and reach protected expression." *O'Day*, 109 Wn.2d at 806. In light of *O'Day*, the Seattle ordinance, SMC 6.270.100, is constitutional only because the standards of conduct in section (A)(2) are limited by the nonobscene dance exception in section (C).

A. The following standards of conduct must be adhered to by employees of any adult entertainment premises:

. . .

2. No employee or entertainer shall perform acts of or acts which simulate:

a. Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law;

b. The touching, caressing or fondling of the breasts, buttocks or genitals; or

c. The displaying of the pubic region, anus, vulva or genitals;

SMC 6.270.100(A)(2).

C. This chapter shall not be construed to prohibit protected expression, such as:

1. Plays, operas, musicals, or other dramatic works that are not obscene;

2. Classes, seminars and lectures held for serious scientific or educational purposes that are not obscene; or

3. Exhibitions, performances, expressions or dances that are not obscene.

SMC 6.270.100(C).

To define "obscenity," section (D) of the ordinance adapts the test set forth in *Miller v. California*:

D. For purposes of this chapter, an activity is "obscene" if:

1. Taken as a whole by an average person applying contemporary community standards the activity appeals to a prurient interest in sex;

2. The activity depicts patently offensive representations, as measured against community standards, of:

a. Ultimate sexual acts, normal or perverted, actual or simulated, or

b. Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape, or torture; and

3. The activity taken as a whole lacks serious literary, artistic, political, or scientific value.

SMC 6.270.100 (D). *See Miller v. California*, 413 U.S. 15, 23-24, 93 S. Ct. 2067, 37 L. Ed. 2d 419 (1973).

Under *O'Day*, the exception in section (C) is integral to the constitutionality of the regulation. Therefore, there must be an assessment that the performance "as a whole" is not protected expression under section (C) before the police may make an arrest under section (A)(2).

The City's solution of directing police officers to focus on body parts alone and ignore the performance is a simple one, but it comes at the expense of sensitivity to the nuances of expression. A possible consequence of allowing police to enforce the section (A)(2) standards without considering the test for obscenity in section (D) is that dancers will be arrested for simulating sexual acts and touching certain body parts even though their activities are not patently offensive, and even if the performance has serious artistic value. We conclude that consideration of obscenity is essential to the determination of probable cause to arrest under SMC 6.270.100(A)(2).

Furfaro contends that the appropriate procedure for considering obscenity is an application for a warrant. Opposing a warrant requirement, the City relies on the rule that police officers may make warrantless arrests for misdemeanor violations that are committed in their presence. RCW 10.31.100; *State v. White*, 129 Wn.2d 105, 108-09, 915 P.2d 1099 (1996). The City contends that this court, in *Torrey v. City of Tukwila*, 76 Wn. App. 32, 42, 882 P.2d 799 (1994), already decided that police may make warrantless arrests for violations of adult entertainment standards of conduct. But in *Torrey*, the arrested dancers conceded the existence of probable cause and did not contend on appeal that their arrest raised First Amendment concerns.

A physical arrest is a seizure under the Fourth Amendment and must be preceded by a determination that there is probable cause to believe the person arrested has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). Therefore, a warrantless arrest should not be allowed in a situation where officers lack the ability to determine probable cause. The determination of probable cause to arrest stage dancers under section (A)(2), like the determination of probable cause to seize books and films, calls for sensitive discernment. Constitutionally protected nude expression must be distinguished from public nudity that may legitimately be punished as pure conduct or obscene expression. The line to be drawn is an elusive one. The warrantless arrest rule of RCW 10.31.100 is inapplicable when this level of judgment is called for. *See Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1359 (5th Cir.), *cert. denied*, 447 U.S. 931 (1980) (refusing to "apply a statute normally appropriate for the case of a fleeing robber to items presumptively protected by the First Amendment"). It is reasonable to permit action without prior judicial evaluation where there are exigent circumstances "in which police action literally must be 'now or never' to preserve the evidence of the crime." *Roaden*, 413 U.S. at 505. But the facts surrounding the arrests in this case do not present "now or never" cir-

cumstances any more than a seizure of books or films would.

Whether the seizure operates as a prior restraint is the primary factor to weigh in deciding whether a judicial warrant is necessary to authorize the seizure. The United States Supreme Court held in *Roaden v. Kentucky* that the precipitate seizure of a film by a police officer, without the authority of a constitutionally sufficient warrant, was "plainly a form of prior restraint" and therefore unreasonable under the Fourth Amendment. *Roaden*, 413 U.S. at 504. Furfaro contends that the arrests of the stage dancers similarly can be characterized as a prior restraint.

The City claims that our Supreme Court has already decided in *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 132, 937 P.2d 154 (1997), *cert. denied*, 522 U.S. 1077 (1998), that restrictions on stage dancing are not a prior restraint because they affect only conduct, not expression. But in *Ino Ino,* the court was addressing a regulation requiring stage dancers to maintain an eight-foot distance between themselves and patrons. The Court concluded that the eight-foot rule limits only proximity, not the expressive aspect of stage dancing. The standard of conduct presently at issue prevents entertainers from performing certain movements and touching certain body parts as part of a dance routine. *See* SMC 6.270.100(A)(2). This standard, which the court had no occasion to address in *Ino Ino*, does tend to restrict the expressive aspect of nude stage dancing.

■ A prior restraint is an act that "prohibits future speech, as opposed to punishing past speech." *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 764, 871 P.2d 1050, *cert. denied*, 513 U.S. 1056 (1994). Neither the United States Supreme Court nor any Washington court has decided whether warrantless arrests of nude dancers in an adult nightclub are a prior restraint. Courts in Illinois and New York have reached opposite conclusions on the issue. When a Chicago trial court found a live dance performance to be analogous to a film, an Illinois appeals court reversed. *City*

*of Chicago v. Hanson*, 105 Ill. App. 3d 1017, 1022, 435 N.E.2d 120, 61 Ill. Dec. 631 (1981). The court reasoned that no prior restraint issue was involved "as arrests can only be made *after* an observation of criminal activity takes place"; the evaluation by the police officer was not a final determination of the matter; and there was no conclusive evidence "that future performances or the operation of the theatre was impeded." *Hanson*, 435 N.E.2d at 124. The court also emphasized that live performances are not analogous to films. "[T]he permanent nature of celluloid and other written materials facilitates a prior judicial determination of obscenity, unlike a live performance with a capacity to be altered continuously and thus can move in and out the realm of illegitimacy." *Id. But cf. City of Chicago v. Festival Theatre Corp.*, 88 Ill. App. 3d 216, 230-31, 410 N.E.2d 341, 43 Ill. Dec. 341 (1980), *aff'd*, 91 Ill. 2d 295 (1982) (the fact that the content of future expression is unknown is the very reason why prior restraint on live expression bears an even heavier presumption against its validity than prior restraint of books or films).

In contrast to *Hanson*, the Criminal Court of the City of New York has concluded that live performers "may be unfairly restrained by arrest not only from completing an ongoing performance but from performing again in the near future following arrest. Arrest effectively discourages not only the performer but his or her producers and patrons from allowing the same or similar performances to take place again." *People v. Adais*, 114 Misc. 2d 773, 776, 452 N.Y.S.2d 543 (N.Y. Crim. Ct. 1982). *But cf. People v. Morgan*, 86 Misc. 2d 377, 382, 382 N.Y.S.2d 666 (N.Y. Crim. Ct., 1976) (same court as in *Adais*, opposite conclusion; "We would have to stretch our imaginations beyond credible balance to take the position that the chilling effect in depriving the people of the City of New York from viewing the gyrations of a nude dancer in a topless bar is such a prior restraint as to reach First Amendment proportions.").

Comparing *People v. Adais* with *City of Chicago v. Han-*

*son*, we conclude that *Adais* more carefully applies the First Amendment principles developed in *Marcus* and *Roaden*. We cannot dispense with the warrant requirement for live performances on the basis that it is too difficult to implement. The controversial content of human expressive activity does not have to be captured in a film canister or within the covers of a book to make it worthy of protection. The "basic principles of freedom of speech and the press, like the First Amendment's command, do not vary." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503, 72 S. Ct. 777, 96 L. Ed. 1098 (1952). These principles make freedom of expression the rule to which the warrant requirement must adapt. They do not require the various forms of expressive activity to adapt so as to facilitate applying for a warrant. As the *Adais* court commented, it is "almost preposterous to believe that systems of censorship prohibited by our Constitution as to book publishers and film producers ought not be prohibited as to our dancers, actors and comedians." *Adais*, 114 Misc. 2d at 776.

The arrests of the entertainers and manager at Rick's has an effect comparable to that created by the seizure described in *Marcus v. Search Warrants*. Like the distributor of magazines, the proprietor of Rick's may have every reason to believe the stage dancers' performances are "constitutionally protected and will be so held after judicial hearing, but his belief is unavailing as against the contrary judgment of the police officer" who can stop the performance and thereby intimidate other entertainers who might otherwise carry on with similar dance routines. *See Marcus*, 367 U.S. at 736. The right to a trial is not a remedy sufficiently immediate and effective to prevent the chilling effect of a wrongful arrest. *See City of Seattle v. Bittner*, 81 Wn.2d 747, 757, 505 P.2d 126 (1973). We conclude that warrantless arrests under section (A)(2) of the Seattle standards of conduct ordinance are a prior restraint, and therefore unreasonable under the Fourth Amendment.

There are no insurmountable practical problems to a rule requiring police to obtain a constitutionally sufficient

warrant before making an arrest based on conduct witnessed during a live performance. It is not necessary that the court personally watch the performance; it is enough to provide testimony from observers who are able to describe the performance as a whole in sufficient detail to allow the court to focus searchingly on the question of obscenity. *See Adais*, 114 Misc. 2d at 777. The United States Supreme Court has discussed the level of detail necessary for an affidavit describing allegedly obscene films. *See New York v. P.J. Video*, 475 U.S. at 876-77. Our state constitution may, of course, require greater detail as it is even more hostile to prior restraints than the federal constitution. *See Ino Ino*, 132 Wn.2d at 115; *JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 891 P.2d 720 (1995).

In conclusion, the warrantless arrests of appellants Furfaro, Kidder and Silva based on the dancers' alleged violations of section (A)(2) of the ordinance violated their rights afforded by the First and Fourteenth Amendments of the United States Constitution. In their damages claim under 42 U.S.C. § 1983, the appellants have demonstrated a constitutional deprivation as a matter of law.

Because the case must now be remanded for a new trial based on that premise, the trial court will have an opportunity to reexamine other issues raised in this appeal, including the existence of an official policy or custom, the availability of injunctive or declaratory relief under both the federal and state constitutions, and jury instructions. For us to rule on these issues on the present state of the record would be in the nature of rendering an advisory opinion, and we refrain from doing so.

## QUALIFIED IMMUNITY

██ ██ One issue that can be decided now is whether the trial court erred in dismissing, on the basis of qualified immunity, several individual police officers who participated in the arrests. Qualified immunity is a judicially created doctrine protecting government officials from civil liability for performing discretionary functions "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Once a defendant properly raises the issue of qualified immunity, the plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the occurrence at issue. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Altshuler v. City of Seattle*, 63 Wn. App. 389, 395, 819 P.2d 393 (1991), *review denied*, 118 Wn.2d 1023 (1992).

The contours of the right to perform a nude stage dance without fear of warrantless arrest are not clearly established. The lower courts from other states where the issue has been confronted have reached inconsistent results. The trial court properly dismissed the claims against the individual police defendants based on qualified immunity.

## ATTORNEY FEES

Appellants request an award of attorney fees and costs as prevailing parties under 42 U.S.C. § 1988. Because the extent to which they have prevailed is as yet unknown, *see Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 663-66, 935 P.2d 555 (1997), an award of attorney fees is premature at this point. The request is denied without prejudice to renewing it in the trial court for fees incurred on appeal as well as at trial.

The judgment dismissing the appellants' federal damage claim against the City of Seattle, and their claims for injunctive and declaratory relief under the state and federal constitutions, is reversed and remanded for further proceedings. The judgment of dismissal of the appellants' damage claim against the individual defendants is affirmed.

AGID, A.C.J., and APPELWICK, J., concur.

Review granted at 140 Wn.2d 1012 (2000).