[No. 33670-3-I. Division One. September 19, 1994.]

NIKKI TORREY, ET AL, *Appellants*, v. THE CITY OF TUKWILA, ET AL, *Respondents*.

*Jack R. Burns* and *Burns & Hammerly*, for appellants.

*William P. Schoel* and *Keating, Bucklin & McCormack P.S.; Michael R. Kenyon* and *Revelle Hawkins P.S.*, for respondents.

KENNEDY, J. — Nikki Torrey, Lee Ann Pierce and Yolanda Dewberry appeal the trial court's summary judgment dismissing their civil rights action against the City of Tukwila and Police Sergeant D. Rekow. Torrey, Pierce and Dewberry contend that (1) Rekow and Tukwila violated state and federal constitutional law when Rekow arrested them without a warrant for a misdemeanor committed outside of his presence; (2) Rekow and Tukwila violated the federal and state constitutions when Rekow ignored the mandatory release factors of CrRLJ 2.1(b) and unreasonably arrested them; and (3) Rekow and Tukwila violated state and federal due process requirements as well as RCW 10.01.050 when Torrey, Pierce and Dewberry were incarcerated prior to trial. We reject these arguments and affirm the trial court.[1]

## FACTS

Chapter 5.56 of the Tukwila Municipal Code (TMC), a business licensing chapter, regulates adult entertainment cabarets. It requires, among other things, that persons performing in such establishments be licensed by the City and that they adhere to certain "standards of conduct".[2] Torrey, Pierce and Dewberry (hereinafter sometimes referred to as "the dancers") were entertainers licensed by the City of Tukwila to perform adult entertainment, and were employed by the Deja Vu Airport Club in Tukwila.

The Tukwila police and city attorney planned a series of raids at the Deja Vu Club. One raid took place in June of 1991 and another took place in April of 1992. The purpose of these raids was to enforce the standards of conduct provision of TMC 5.56. During the planning of these raids it was determined that all dancers arrested would be taken into custody, booked, fingerprinted, checked through state and national criminal computer networks and required to post bail in order to secure their release. Sgt. Rekow's explana-

---

[1] In so holding, we find it unnecessary to reach Tukwila's and Rekow's good faith immunity claim.

[2] TMC 5.56.070.

tion of why full custodial arrests and incarceration were planned, as opposed to releasing the dancers on promises to appear, was simply that it was always done that way. Rekow also explained that taking the dancers into custody and processing them through the computer provided the police department with information which could not otherwise be gathered and which might prove useful at a later point in time.

At a pre-raid police briefing, officers selected to pose as customers were given copies of TMC 5.56 to read and an overview of what constituted a violation of the standards of conduct provision. The participating officers were also advised that all suspected offenders would be taken into physical custody, *i.e.*, no one would be released after the issuance of a citation.

On the evening of April 3, 1992, several undercover officers entered the Deja Vu Club posing as patrons. Sgt. Rekow later entered the club and ordered all the dancers to one end of the room. Tukwila concedes that, after the undercover officers identified the dancers who they had seen violating the standards of conduct ordinance, these dancers were seized within the meaning of the constitution in that they were not free to leave.[3] *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975) (whenever an officer restrains the freedom of a person to walk away, he has seized that person).

The identified dancers were photographed with their identifying officer, and then were arrested and taken to the Tukwila jail. Torrey, Pierce and Dewberry were among the dancers arrested. Torrey and Pierce were released on bail shortly after their arrival, but Dewberry remained in jail for about 2 days before she was able to post bail.[4]

---

[3]Although it is not clear from the record, we assume that the dancers who had not been identified by undercover officers were free to leave after the identification procedure was completed.

[4]From the record it appears that Dewberry was not bailed out by the Deja Vu Club because she owed money to the Club. Dewberry does not show exactly how long she was held in jail. She states only that it was "a total of two days" and "two days". Clerk's Papers, at 135, 136.

Torrey, Pierce and Dewberry filed suit against Tukwila and Rekow, alleging two different causes of action. In the first cause of action the dancers allege that Tukwila and Rekow conspired to deprive them of equal privileges and immunities under the law, and that, in furtherance of that conspiracy, one or more of the conspirators caused the Tukwila Police Department to deprive them of their rights under the first, fourth, and fourteenth amendments to the United States Constitution and Const. art. 1, §§ 5 and 7. Under this cause of action, Torrey, Pierce and Dewberry seek damages and attorney fees under 42 U.S.C. §§ 1983,[5] 1985(3),[6] 1986[7] and 1988.[8] In the second cause of action, Torrey, Pierce and

---

[5] 42 U.S.C. § 1983 (1988) provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

Section 1983 is violated whenever a person proximately causes a deprivation of a federal constitutional right or a violation of another federal statutory right. *See Harris v. Roseburg*, 664 F.2d 1121 (9th Cir. 1981); *Carbonell v. Louisiana Dep't of Health & Human Resources*, 772 F.2d 185 (5th Cir. 1985).

[6] 42 U.S.C. § 1985(3) (1988) provides in part:

"If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is . . . deprived of having and exercising any right or privilege of a citizen of the United States, the party so . . . deprived may have an action for the recovery of damages occasioned by such injury or deprivation[.]"

[7] 42 U.S.C. § 1986 (1988) provides in part:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]"

[8] 42 U.S.C. § 1988 (1988), *amended by* 42 U.S.C. § 1991 (Supp. 3, 1991) provides in part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Dewberry allege that Tukwila and Rekow's actions were unconstitutional in that they were intended to chill their exercise of free speech rights.[9]

During discovery, Torrey, Pierce and Dewberry's attorney stipulated that the undercover police officers who witnessed the illegal conduct had probable cause to believe that the dancers had committed a gross misdemeanor in their presence.

The dancers moved for partial summary judgment that Tukwila and Rekow were liable to them for damages resulting from their illegal arrests and false imprisonment, in violation of both state and federal law. Tukwila and Rekow moved for summary judgment of dismissal. The trial court denied the dancers' motion, granted Tukwila's and Rekow's motion, and dismissed the complaint. Torrey, Pierce and Dewberry now appeal.

### DISCUSSION

In order to state a cause of action under 42 U.S.C. § 1983, Torrey, Pierce and Dewberry must show that (1) Rekow and Tukwila acted under color of state law; and (2) Rekow and Tukwila deprived them of rights secured by the United States Constitution or federal law. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). There is no dispute that Rekow and Tukwila were acting under color of state law when the dancers were arrested. However, in order to prevail on appeal the dancers must also show a deprivation of a federal constitutional or federal statutory right. *Barry*, 902 F.2d at 772.

42 U.S.C. § 1985(3) prohibits conspiracies to deprive persons or classes of persons of the equal protection of the law or of equal privileges and immunities under the law. Section 1985(3) only applies to discriminatory deprivations

---

[9]Torrey, Pierce and Dewberry have not assigned error to, or argued any issues related to, this contention. Accordingly we treat this contention as abandoned. RAP 10.3(g); *see, e.g, Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 709-10, 592 P.2d 631 (1979) (the court will consider only a claimed error that is included in an assignment of error or clearly disclosed in the associated issues pertaining thereto, unless the nature of the challenge is perfectly clear).

of federal rights against members of a protected class. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971); *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (plaintiff must be a member of a class that requires special federal assistance in protecting its civil rights; shared unpopular beliefs do not define a class), *cert. denied*, 504 U.S. 957, 119 L. Ed. 2d 227, 112 S. Ct. 2306 (1992). Thus, section 1985(3) does not create a cause of action for conspiracies to deprive persons of rights guaranteed only by state law and it applies only to discriminatory deprivations of federal rights. *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983).

To recover under section 1985(3) Torrey, Pierce and Dewberry must prove four elements: a conspiracy; a purpose of depriving them, as members of a protected class, directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws; an act in furtherance of the conspiracy; an injury to their persons or property or deprivation of any right or privilege of a citizen of the United States. *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 223 (6th Cir. 1991).

After reviewing the record we conclude that Torrey, Pierce and Dewberry's section 1985(3) claim fails by reason of their failure to identify the protected class of which they are members.

■ A finding of conspiracy under either section 1983 or section 1985 is a necessary prerequisite to a finding of liability under section 1986. Section 1986 authorizes action against any person who knows that a conspiracy actionable under section 1983 or 1985(3) is about to be committed, has the power to prevent or aid in preventing the conspiratorial wrongs, and fails to or neglects to act. *Lac du Flambeau Band of Lk. Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991).[10]

---

[10]To the extent that Torrey and Dewberry's section 1985(3) claim fails for failure to identify a federally protected class, their section 1986 claim fails as well.

■ Section 1988 is merely procedural in nature and does not create an independent cause of action; its application is dependent on a plaintiff's having stated a claim in which relief can be granted under other federal laws. *Whitten v. Petroleum Club*, 508 F. Supp. 765, 772 (W.D. La. 1981). Congress' primary concern in enacting section 1988 was to recompense private attorneys general, on whom enforcement of the various civil rights acts largely depends, for the single largest cost of successful litigation, attorney's fees. *Page v. Preisser*, 468 F. Supp. 399, 403 (S.D. Iowa 1979).

In order to prevail on any of their federal causes of action, Torrey, Pierce and Dewberry must show some violation of their federal rights. The dancers first contend that their arrest violated RCW 10.31.100,[11] because Rekow, the arresting officer, was not the officer who observed a misdemeanor being committed in his presence.

■ In *United States v. Goeltz*, 513 F.2d 193, 197 (10th Cir.), *cert. denied*, 423 U.S. 830 (1975), the court adopted a "fellow officer" rule which provides that in those circumstances where police officers are acting together as a unit, cumulative knowledge of all the officers involved in the arrest may be considered in deciding whether there was probable cause to apprehend a particular suspect. We have no difficulty applying the fellow officer rule to the facts of this case.[12] Thus, the question of whether Sgt. Rekow did or did not utter the actual words, "you are under arrest" is not a material issue of fact.

■ Even if we were to assume a violation of RCW 10.31.100, the dancers' claim would not survive because it is not

---

[11]RCW 10.31.100 provides in part: "[an] officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer[.]"

[12]The fellow officer rule has been applied by Washington courts. *See State v. Maesse*, 29 Wn. App. 642, 647, 629 P.2d 1349 (where police officers were acting together as unit, cumulative knowledge of all officers involved in arrest may be considered in deciding whether there was probable cause to apprehend particular suspect), *review denied*, 96 Wn.2d 1009 (1981); *State v. Alvarado*, 56 Wn. App. 454, 456-57, 783 P.2d 1106 (1989) (cooperation between investigating officers or arrest directive made by officer possessing probable cause sufficient to justify arrest by officer lacking knowledge of facts which form basis of probable cause), *review denied*, 114 Wn.2d 1015 (1990).

based on a federal constitutional violation. "The [common law] requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Barry*, 902 F.2d at 772; *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974) (there is no cause of action for "false arrest" under section 1983 unless the arresting officer lacked probable cause).

At oral argument the dancers argued that their complaint also raises claims of false arrest and false imprisonment under state law, independent of their federal civil rights claims. Although such independent claims are not apparent on the face of the complaints, and although the dancers cite to no authority for their contention that any violation whatsoever of the Washington Constitution would give rise to an independent cause of action, we note that their stipulations as to probable cause for arrest would defeat any independent state claim for false arrest, particularly in view of our application of the fellow officer rule.[13]

Torrey, Pierce and Dewberry next contend that the criminal charges were instituted by citation, rather than by complaint; therefore, CrRLJ 2.1(b) governs the procedures prior to their arrest.

After looking at the record we conclude that the prosecutor amended and signed each "citation" before the Municipal Court formally processed it. These were complaints as a matter of law and we have no hesitancy so holding.

■ The dancers also argue that their arrest was unlawful because it was carried out without consideration of the mandatory release factors of CrRLJ 2.1(b)(2).[14] In making this argument, Torrey, Pierce and Dewberry ignore CrRLJ 2.1-

---

[13]The application of the *Gunwall* factors to this claim is only relevant if Torrey, Pierce and Dewberry have made out a sufficient independent claim for false imprisonment under the Washington Constitution, which they have not done. *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[14]CrRLJ 2.1(b)(2) provides:

"In determining whether to release the person or to hold him or her in custody, the peace officer shall consider the following factors:

"(i) whether the person has identified himself or herself satisfactorily;

(b)(1)[15] which provides that officers *may* cite and release in lieu of arrest. We disagree that subsection (2) *requires* police to consider the release factors in every misdemeanor or gross misdemeanor nonminor traffic offense situation. *See, e.g., State v. Reding*, 119 Wn.2d 685, 690-96, 835 P.2d 1019 (1992) (when a motorist commits one of the more serious traffic offenses listed in RCW 10.31.100(3), custodial arrest is authorized; this is a matter of legislative, not constitutional, limitation).

█ Moreover, the federal constitution permits a full custodial arrest for even minor traffic violations. *See United States v. Franklin*, 728 F.2d 994, 997 (8th Cir. 1984) (full custodial arrest for absence of license plate, state inspection sticker and city and county permit upheld under the Fourth Amendment); *see also United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, 494 (1973) (full custodial arrest for driving while license was revoked upheld under the Fourth Amendment); *Gustafson v. Florida*, 414 U.S. 260, 265-66, 38 L. Ed. 2d 456, 94 S. Ct. 488 (1973) (same); *but see United States v. Barber*, 839 F. Supp. 193 (W.D.N.Y. 1993) (noting that the Supreme Court has expressly reserved the issue whether there are traffic offense arrest situations in which it would not be "reasonable" under the Fourth Amendment to make a full custodial arrest) (citing *Cummins v. United States*, 502 U.S. 962, 116 L. Ed. 2d 448, 112 S. Ct. 428, 429 (1991) (mem.) (White, J., dissenting)). Accordingly, Torrey and Dewberry's claim is based on a claimed violation of a state law which

---

"(ii) whether detention appears reasonably necessary to prevent imminent bodily harm to himself, herself, or another, or injury to property, or breach of the peace;

"(iii) whether the person has ties to the community reasonably sufficient to assure his or her appearance or whether there is substantial likelihood that he or she will refuse to respond to the citation and notice; and

"(iv) whether the person previously has failed to appear in response to a citation and notice issued pursuant to this rule or to other lawful process."

[15]CrRLJ 2.1(b)(1) provides:

"Whenever a person is arrested or could have been arrested pursuant to statute for a violation of law which is punishable as a misdemeanor or gross misdemeanor the arresting officer, or any other authorized peace officer, *may* serve upon the person a citation and notice to appear in court." (Italics ours.)

exceeds federal protection, and cannot serve as the basis for a section 1983 claim.

As for Torrey, Pierce and Dewberry's federal false imprisonment claims, the stipulation of probable cause does not totally resolve the issue. However, because we find that full custodial arrest is an available option, and because none of the dancers was held for more than 48 hours before either bailing out or being brought before a magistrate for a probable cause hearing, there is no violation of federal law.[16]

The dancers also contend that their pretrial incarceration served no legitimate purpose and was therefore punitive, in violation of federal due process and state constitutional principles.[17] The essence of this argument is that, because Sgt. Rekow did not consider the CrRLJ 2.1(b)(2) release factors, and because he could not articulate an important governmental interest in jailing the dancers, as opposed to merely citing them, the more significant interest held by the dancers in being free from incarceration outweighed the State's interest; therefore, the incarceration was unconstitutional. *See Tennessee v. Garner*, 471 U.S. 1, 8, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985) (to determine the constitutionality of a seizure the court must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion).

We find the *Garner* analysis inapplicable.[18] Clearly the police may balance competing interests in making their de-

---

[16]The *Gunwall*, analysis adds nothing to this claim; federal law controls. Under federal law, custodial arrest, even for a minor traffic violation, is constitutional. Arrestees may be held in jail for such offenses for up to 48 hours before being brought to a magistrate. *County of Riverside v. McLaughlin*, 500 U.S. 44, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991).

[17]Torrey, Pierce and Dewberry also claim that their pretrial incarceration violated RCW 10.01.050, which provides:

No person charged with any offense against the law shall be punished for such offense, unless he shall have been duly and legally convicted thereof in a court having competent jurisdiction of the case and of the person.

Our research reveals that this provision has never been applied to pretrial incarceration, and we decline to do so now.

[18]*Garner* and the cases cited therein are distinguishable. *Garner* involved the constitutionality of a state statute which justified the use of deadly force by police

termination whether to arrest or to cite and release, as provided for by CrRLJ 2.1(b)(1) and (2). However, the decisions as to whether to require bail and whether or not the officers had probable cause to arrest has historically been left to the courts.

Here, not even Dewberry complains that her rights under *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 114 L. Ed. 2d 49, 111 S. Ct. 1661 (1991) (judicial determinations of probable cause made within 48 hours of arrest presumed constitutional) were violated. Dewberry never clearly states how long she was held.[19] Moreover, Dewberry stipulates that there was probable cause for her arrest, complaining only that the wrong officer arrested her; that a full custodial arrest was unlawful in her case; and that, once booked, requiring her to post bail or await in jail the judicial probable cause hearing was per se punitive because there is no allegation by the City that Dewberry failed to meet the mandatory release factors.

 Under *Riverside*, a 48-hour delay before a judicial probable cause determination may be too long if the plaintiff can show that his or her probable cause determination was delayed unreasonably, *i.e.*, that the delay was motivated by ill will or out of a desire to gather more evidence to justify the arrest. *Riverside*, 500 U.S. at 56-57. We presume without deciding that Washington law would be the same on that issue. However, when police comply with RCW 10.31, the fact that they could have considered, but did not automatically consider, CrRLJ 2.1(b)(2) and the release factors,

---

officers, even where the suspect was not considered to be a threat to the officer or the community. Clearly, the Court's inquiry was with regard to the police officer's decision about the appropriate amount of force. None of the cases cited in *Garner* involve the decision to incarcerate. Rather, they involve activities by police investigators after the person was seized. *See, e.g., Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (surgery under general anesthesia to obtain evidence unconstitutional); *Winston v. Lee*, 470 U.S. 753, 84 L. Ed. 2d 662, 105 S. Ct. 1611 (1985) (detention for fingerprinting without probable cause unconstitutional).

[19]A plaintiff who argues that he or she was subjected to punitive pretrial imprisonment must be exact in alleging the duration of the incarceration; "about 2 days" is not particularly persuasive.

and in fact consciously rejected that option, does not in our view state a federal or a state cause of action for punitive (false) imprisonment, without more (such as the kind of discriminatory animus against a person or class referred to as an element for a 42 U.S.C. § 1985(3) claim).

An officer or police agency who elects an option that is permissible under state and/or federal law does not violate civil rights simply because there was a less intrusive and equally permissible option available. *Cf. People v. Toohey*, 438 Mich. 265, 290, 475 N.W.2d 16, 27 (1991) (police decision to impound unattended vehicle of arrestee was reasonable even though a less intrusive alternative was available).

Since custodial arrest was permissible here, *see, e.g., Reding,* then it follows that Torrey, Pierce and Dewberry could be held in jail pending the posting of bail or a probable cause hearing. *See* CrRLJ 3.2.1(a), (b); CrRLJ 3.2(a).

Affirmed.

WEBSTER, C.J., and PEKELIS, J., concur.

Reconsideration denied October 13, 1994.