[No. 68971-7. En Banc.]
Argued September 21, 2000. Decided August 2, 2001.

NICK FURFARO, ET AL., *Respondents*, v. THE CITY OF SEATTLE, *Petitioner*.

364

*Stephen P. Larson* and *David O. Onsager* (of *Stafford Frey Cooper*), for petitioner.

*Gilbert H. Levy*; and *P. Cameron DeVore* and *Kraig L. Baker* (of *Davis Wright Tremaine*), for respondents.

Guy, J.[*] — Petitioner the City of Seattle (City) seeks review of a decision by the Court of Appeals, Division One, in *Furfaro v. City of Seattle*, 97 Wn. App. 537, 551, 984 P.2d 1055 (1999), which held that the warrantless arrests of

---

[*] Justice Richard P. Guy is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

respondents Nick Furfaro, Brandy Kidder, and Esmeralda Silva (Respondents) based on the nude dancers' alleged violation of Seattle Municipal Code (SMC) 6.270.100(A)(2) violated their rights afforded by the First and Fourteenth Amendments to the United States Constitution. After one of the defendant dancers was acquitted and the charges against the remaining defendants dismissed, Respondents sued the City and several officers individually. Respondents lost at the trial court level. The Court of Appeals reversed and remanded for a new trial, and the City petitioned for review by this court. We limit our consideration to federal claims actionable under 42 U.S.C. § 1983 for an alleged violation of the First and Fourth Amendments. State constitutional claims for injunctive and declaratory relief arising under Washington Constitution article I, section 5, are remanded to the Court of Appeals, Division One, for further appropriate proceedings.

We affirm the judgment of the Court of Appeals but not its reasoning. We do not agree that the fact that the arrests of Respondents were accomplished without warrants violated their rights afforded by the First, Fourth, and Fourteenth Amendments to the United States Constitution. *See Furfaro*, 97 Wn. App. at 550-51. Also, Respondents' 42 U.S.C. § 1983 claim for violation of rights secured by the Washington State Constitution fails to assert a § 1983 claim. Nevertheless, we remand for a new trial Respondents' claim against the City under 42 U.S.C. § 1983 because we find their case was prejudiced by an erroneous and misleading jury instruction. The instruction allowed the jury to ignore the exception for protected expression contained in SMC 6.270.100(C) and to find that the arresting officers had probable cause without the jury's considering whether there were reasonable grounds to believe that the conduct was obscene. The Respondents' claim, that their Fourth Amendment rights were violated because the officers lacked probable cause to make the arrests, was prejudiced by the erroneous instruction. Therefore, we reverse the trial court's judgment of dismissal and remand this case for a new trial consistent with this opinion.

## FACTS

On November 20, 1995, two undercover officers of the Seattle Police Department entered Rick's, an adult nonal-

coholic nightclub in Seattle. Reporter's Tr. on Appeal (Rep. Tr.) (Dec. 10, 1997) at 146-47; *Furfaro*, 97 Wn. App. at 539. The officers were to look for violations of the standards of conduct ordinance. Rep. Tr. at 147 (Dec. 10, 1997). One of the detectives observed the stage dancers inside the club and tape-recorded his observations. *Furfaro*, 97 Wn. App. at 542. Typical of the recorded observations is this example: "Gabrielle on the main stage black sparkling string bikini. She touched her anus, buttocks, massaged her breasts. Gabrielle has long brown hair, slightly on the heavy side." Opening Br. of Appellants at A-27 (Swanson Tape). After making these observations the detective left and met with other officers. *Furfaro*, 97 Wn. App. at 542. The officers returned to Rick's and arrested 13 dancers, including Kidder and Silva, and the club manager, Rick Furfaro. *Id.* at 539, 542. The arrests were made without a warrant. *Id.* at 539.

On July 15, 1996, one of the dancers was tried and acquitted in Seattle Municipal Court; the City dismissed the charges against the other defendants. *Id.* at 539. Furfaro, Kidder, and Silva then sued the City and several individual police officers. *Id.* at 539-40. In a summary judgment order, issued on July 3, 1997, the trial court, among other actions, dismissed Respondents' state tort claims, found as a matter of law that warrants were not needed to arrest Respondents, found the individually named defendants were entitled to qualified immunity, and reserved for trial the issues of (1) whether Kidder's and Silva's activities on stage were conduct or expression and if expression, whether they were obscene, and (2) Respondents' claim for injunctive and declaratory relief. Clerk's Papers at 562-63. The jury found that police did have probable cause to arrest Respondents for violating SMC 6.270.100. *Furfaro*, 97 Wn. App. at 540. Judgment on the jury verdict was issued on January 23, 1998. Clerk's Papers at 893-94. On February 10, 1998, the trial court also denied Respondents' motion for judgment as a matter of law or in

the alternative denied a new trial. Clerk's Papers at 928-29.

On appeal, only Respondents' claim for damages under 42 U.S.C. § 1983 was at issue. *Furfaro*, 97 Wn. App. at 540. The Court of Appeals held that the police should have obtained a warrant for the arrests and that Respondents were entitled as a matter of law to an instruction that the warrantless arrest was a deprivation of their rights under the United States Constitution. *Id.* at 540-41. The appeals court reversed the judgment of dismissal and remanded for a new trial. *Id.* at 541. The court also revived Respondents' claims for injunctive and declaratory relief under the state and federal constitutions and remanded these claims for further proceedings. *Id.* at 552. The trial court's dismissal of Respondents' damage claim against the individual defendants was affirmed. *Id.* The City filed a petition for review on December 6, 1999, assigning error to the Court of Appeals decision and urging reversal.

## ISSUES

(1) Were the warrantless arrests of Furfaro, Kidder, and Silva for violations of SMC 6.270.100 a deprivation as a matter of law of their rights under the First and Fourteenth Amendments of the United States Constitution?[1]

(2) May a person filing a claim under 42 U.S.C. § 1983 recover for the deprivation of rights secured by the Washington State Constitution and Washington law?

(3) Did the police officers have probable cause to make arrests under SMC 6.270.100 when they arrested the

---

[1] Kidder and Silva were arrested for violations of SMC 6.270.100(A)(2). Clerk's Papers at 319, 363. Furfaro was arrested for violating SMC 6.270.100(A)(5), which reads, "No manager or operator shall knowingly permit any person upon the premises to touch, caress, or fondle the breasts, buttocks, anus, genitals or pubic region of another person." Since the officers seemed to observe only solo violations of the standards of conduct, perhaps Furfaro should have been charged under SMC 6.270.100(A)(12): "No manager or operator shall knowingly or recklessly permit or allow any employee or entertainer to violate any provision of this chapter." Nevertheless, for the purposes of this action his claim for relief rests upon Kidder's and Silva's claims. If the officers did not have probably cause under SMC 6.270.100(A)(2) to arrest Kidder and Silva, they did not have probable cause to arrest Furfaro.

performers for conduct without determining whether the conduct was protected expression under SMC 6.270.100(C)?

## DISCUSSION

The Court of Appeals in *Furfaro* held that warrantless arrests under SMC 6.270.100(A)(2) are a prior restraint, and therefore unreasonable under the Fourth Amendment. *Furfaro*, 97 Wn. App. at 550. The Court of Appeals concluded that before making arrests for violations of the ordinance, the City must obtain a judicial determination of probable cause in which the court is able to focus searchingly on the question of obscenity. *Id.* at 539. On the other hand, in its petition for review the City assigned error to the appeals court's conclusion that a warrant was required. Pet. for Review at 2. The City argues that the appeals court's holding that live performances are entitled to the same protection under the First Amendment as that afforded to books and films has no legal precedent. Pet'rs' Suppl. Br. at 19. According to the City, the United States Supreme Court has refused to extend presumptive First Amendment protection to all activities that occur on a stage (Pet. for Review at 11-12 (citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67, 93 S. Ct. 2628, 37 L. Ed. 2d 446 (1973); *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 571-72, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991))), and has reiterated that conduct by adult entertainers is not entitled to the same protections as books, films, and political speech in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S. Ct. 1382, 146 L. Ed. 2d 265 (2000). Pet'rs' Suppl. Br. at 19.

The Court of Appeals itself recognized that there is little authority to support a warrant requirement in cases such as this one. Although the United States Supreme Court in *Roaden v. Kentucky*, 413 U.S. 496, 504, 93 S. Ct. 2796, 37 L. Ed. 2d 757 (1973), held that a seizure of a film from a commercial theater without first obtaining a warrant was a

prior restraint and hence unreasonable, the "Supreme Court has not yet decided whether a warrant requirement similarly applies to arrests of persons for activities arguably protected by the First Amendment." *Furfaro*, 97 Wn. App. at 543. In a case discussed by the *Furfaro* court, *Maryland v. Macon*, 472 U.S. 463, 465-66, 471, 105 S. Ct. 2778, 86 L. Ed. 2d 370 (1985), the Supreme Court assumed without deciding that the warrantless arrest of a clerk in an adult bookstore was an unreasonable seizure: "We leave to another day the question whether the Fourth Amendment prohibits a warrantless arrest for the state law misdemeanor of distribution of obscene materials." *Id.* at 471.

■ The case to be made for a warrant requirement for the arrest of persons involved in the category of live performances called nude dancing is even weaker than it is for persons involved with books and film because such performances receive less protection under the First Amendment than do books and film. The *Furfaro* court cites *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932-33, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975), as supporting the proposition that live performances are entitled to the same First Amendment protection against censorship as are books and film. *Furfaro*, 97 Wn. App. at 544. But the Court in *Salem Inn* assigned a low level of protection to the kind of live performances, i.e., nude dancing, at issue: "Although the customary 'barroom' type of nude dancing may involve only the *barest minimum of protected expression*, we recognized in *California v. LaRue*, 409 U.S. 109, 118[, 93 S. Ct. 390, 34 L. Ed. 2d 342] (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances." *Salem Inn*, 422 U.S. at 932 (emphasis added).[2] The *Salem Inn* Court sustained a district court's preliminary injunction enjoining enforcement of a local ordinance which prohibited topless dancing bars; the Court agreed with the district court not because it

---

[2] Affording the "barest" of constitutional protection to the barest forms of expression supports the statement of Justice Hale in *State v. Dixon*, 78 Wn.2d 796, 798, 479 P.2d 931 (1971), where he wrote, "There is nothing unconstitutional about common sense."

wished to protect nude dancing but because the ordinance was overbroad and would have prohibited " 'the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' " *Id.* at 933 (quoting *Salem Inn, Inc. v. Frank*, 364 F. Supp. 478, 483 (E.D.N.Y. 1973), *aff'd*, 501 F.2d 18 (2d Cir. 1974)). In subsequent cases a divided Court continued to find support for only a minimal level of protection for nude dancing. In *Barnes v. Glen Theatre, Inc.*, 501 U.S. at 566, the plurality opinion agreed that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so."[3] Justice O'Connor's plurality opinion in *Pap's A.M.* continues the assignment of low value to this kind of entertainment: "nude dancing of the type at issue here is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection." *Pap's A.M.*, 529 U.S. at 289.[4] The *Furfaro* court correctly points out that decisions of this court have stated that the First Amendment does protect nude dancing. *Furfaro*, 97 Wn. App. at 544. However, this court's statements to that effect have been carefully qualified. In *O'Day v. King County*, 109 Wn.2d 796, 803, 749 P.2d 142 (1988), this court said, citing *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 140, 720 P.2d 818 (1986), that "although the First Amendment protects the communication and expression of a nude dancer, public nudity itself is conduct subject to regulation." Moreover, *Barnes* and *Pap's A.M.*, United States Supreme Court cases decided subsequent to *O'Day*,

[3] Although only three members of the Court signed Justice Rehnquist's plurality opinion, nude dancing receives at least as much protection as stated in that opinion because the three members of the dissent assert that it deserves much more protection. *See Barnes*, 501 U.S. at 593 (White, J., dissenting).

[4] The kind of protection actually given nude dancing is not applicable to this case. Both *Barnes* and *Pap's A.M.* concerned whether ordinances were unconstitutional. The plurality in *Pap's A.M.* stated that the level of scrutiny to be applied to an ordinance depends on whether the regulation is related to the suppression of expression. *Pap's A.M.*, 529 U.S. at 289. If the regulation is not so related, it need satisfy only the less stringent standard from *United States v. O'Brien*, 391 U.S. 367, 376-77, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), for evaluating restrictions on symbolic speech. *Id.*

are more authoritative indications of the amount of protection given to nude dancing by the First and Fourteenth Amendments to the United States Constitution.

■ With respect to the issue of whether a violation of the Fourth Amendment occurred because the arrests were a prior restraint and hence unreasonable, the Court of Appeals once again concedes that authority for its position is scant: "Neither the United States Supreme Court nor any Washington court has decided whether warrantless arrests of nude dancers in an adult nightclub are a prior restraint." *Furfaro*, 97 Wn. App. at 548. Only one decision from a court in a foreign jurisdiction, *People v. Adais*, 114 Misc. 2d 773, 452 N.Y.S.2d 543 (N.Y. Crim. Ct. 1982), has found such an arrest to be a prior restraint. An earlier decision of the same court, *People v. Morgan*, 86 Misc. 2d 377, 382, 382 N.Y.S.2d 666 (N.Y. Crim. Ct. 1976), came to the opposite conclusion.

The Court of Appeals also recognized, in its discussion of the qualified immunity issue, that the warrant requirement was not clearly established. The appeals court agreed that the trial court properly dismissed the claims against individual police officers because the officers had qualified immunity. *Furfaro*, 97 Wn. App. at 552. Qualified immunity protects government officials from civil liability " 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 551-52 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity is appropriate in this case precisely because the right violated was not clearly established: "The contours of the right to perform a nude stage dance without fear of warrantless arrest are not clearly established. The lower courts from other states where the issue has been confronted have reached inconsistent results." *Id.* at 552.

Respondents argue that warrants are required to make the arrests because nude dancing receives the same protection under the First Amendment as do books and film. *Roaden*, 413 U.S. at 504, held that the police seizure of books or films without a constitutionally sufficient warrant

is a form of prior restraint and unreasonable under the Fourth Amendment. Respondents point out that other courts have extended this warrant requirement to the arrests of those accused of possessing or distributing books or films. Answer to Pet. for Review at 14-15. *See, e.g., Penthouse Int'l v. McAuliffe,* 610 F.2d 1353, 1359 (5th Cir. 1980). The final step of Respondents' argument asserts that because the Supreme Court in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557-58, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975), held that live drama receives the same level of First Amendment protection as do other forms of expression, live entertainers are entitled to be free from warrantless arrests. Answer to Pet. for Review at 16-19.

It is not at all clear, however, that *Southeastern* applies to nude dancing. The case arose when the directors of a municipal theater denied a promoter permission to put on a performance of the rock musical "Hair." *Southeastern,* 420 U.S. at 547-48. The Court held such a denial was a prior restraint. *Id.* at 552. Although Respondents would like this case to announce protection for "live performances" or "live entertainment" (Answer to Pet. for Review at 16, 18-19), *Southeastern* appears to deal with a category of expression which excludes the kind of nude dancing at issue in *Furfaro.* The Court used terms such as "live drama" and "theater" to describe the kind of expression being affected and said that "theater usually is the acting out—or singing out—of the written word, and frequently mixes speech with live action or conduct." *Southeastern,* 420 U.S. at 557-58. Despite the live action or conduct aspects of theater, the Court based the protection given to theater on its verbal elements. *Id.* This reasoning applies to "Hair," but appears not to apply to the nonverbal nude dancing of the sort found in adult entertainment establishments. The Court in *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981), did use the category "live entertainment," including nude dancing, because the ordinance at issue prohibited all live entertainment. The Court said that the appellants in *Schad,* operators of an adult

bookstore which featured live dancers performing behind a glass panel, were entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own. *Id.* at 62, 66. Because of the overbreadth of the ordinance, the Court set aside the appellants' convictions without having to determine how much First Amendment protection should be extended to nude dancing. *Id.* at 65, 66. Therefore, the Supreme Court precedents cited by Respondents do not support the claim that the First Amendment affords nude dancing the same level of protection given to books and film.

Therefore, we decline to follow the reasoning of the Court of Appeals that a warrant is required to arrest nude dancers for violations of SMC 6.270.100. Under 42 U.S.C. § 1983 damages are awarded for the deprivation of rights secured by the United States Constitution and federal law. The right to have a warrant issued before an arrest of this nature can be made has not been established by prior case law. On the contrary, the United States Supreme Court's reiterated opinion is that nude dancing receives only minimal protection under the First Amendment. That level of protection is insufficient to support the Court of Appeals' contention that a warrant is required by the First and Fourth Amendments even though no federal or Washington court had recognized such a requirement.

Having declined to follow the Court of Appeals in holding that the United States Constitution requires that warrants be issued in order to make arrests under SMC 6.270.100, we turn to Respondents' assertion that the Washington Constitution also requires warrants.

As the Court of Appeals noted, "[i]n this appeal, only [Respondents'] claim for damages under the federal civil rights statute, 42 U.S.C. § 1983, is at issue." *Furfaro*, 97 Wn. App. at 540. In addition to its claim that the City violated the First Amendment of the United States Constitution, Respondents also present, in the alternative, a claim under article I, sections 5 and 7 of the Washington State Constitution. *See* Pls.' Resp'ts' Suppl. Br. at 4-12. The City

contends that to the extent that Respondents claim a violation of a state law provision that provides greater protection than federal law, they have failed to assert a § 1983 claim. Pet'r's Suppl. Br. at 29. The City objects to any portion of Respondents' claims which depends on Washington State law. *Id.*

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The question before this court is whether the "constitution and laws" refers only to the United States Constitution and federal law or, in addition, to state constitutions and laws.

■■ To state a cause of action under § 1983, a plaintiff must show that (1) the defendant acted under color of state law; and (2) that the defendant deprived the plaintiff of rights secured by the *Constitution or federal law. See Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)). *See also Torrey v. City of Tukwila*, 76 Wn. App. 32, 37, 882 P.2d 799 (1994). In *Barry* the plaintiff brought a section 1983 action, complaining that under California law an officer may make a warrantless misdemeanor arrest only if he has reasonable cause to believe that a person has committed a misdemeanor in his presence, and that she did not commit the act in his presence. *Barry*, 902 F.2d at 772. The Ninth Circuit refused to consider whether a violation of California law occurred but only whether there was a violation of the Fourth Amendment. *Id.* In rejecting her claim, the court said she failed to allege a federal constitutional or federal statutory violation. *Id.* at 773.

Because § 1983 allows for the recovery of damages for

violation of rights secured by the United States Constitution and federal law, a claim under article I, sections 5 and 7 of the Washington State Constitution does not come within the scope of 42 U.S.C. § 1983. We agree with the City that Respondents' claim for relief under 42 U.S.C. § 1983 for violation of rights under the Washington State Constitution fails to assert a § 1983 claim. In addition, Respondents' claim for violations of federal rights may not be supported by Washington case law to the extent that the case law depends upon the Washington Constitution.

We next consider whether the police officers had probable cause to make arrests under SMC 6.270.100 when they arrested the performers for conduct without determining whether the conduct was protected expression under SMC 6.270.100(C). The City claims that it had probable cause to make the arrests for violations of SMC 6.270.100(A)(2) even though no determination of obscenity pursuant to .100(C) and .100(D) was made. On the other hand, the Court of Appeals agreed with Respondents that a consideration of obscenity is essential to the determination of probable cause to arrest under SMC 6.270.100(A)(2). *Furfaro*, 97 Wn. App. at 546. The relevant portions of the ordinance read as follows:

A. The following standards of conduct must be adhered to by employees of any adult entertainment premises:

. . . .

2. No employee or entertainer shall perform acts of or acts which simulate:

a. Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law;

b. The touching, caressing or fondling of the breasts, buttocks or genitals; or

c. The displaying of the pubic region, anus, vulva or genitals; . . .

. . . .

C. This chapter shall not be construed to prohibit protected expression, such as:

1. Plays, operas, musicals, or other dramatic works that are not obscene;

2. Classes, seminars and lectures held for serious scientific or educational purposes that are not obscene; or

3. Exhibitions, performances, expressions or dances that are not obscene.

D. For purposes of this chapter, an activity is "obscene" if:

1. Taken as a whole by an average person applying contemporary community standards the activity appeals to a prurient interest in sex;

2. The activity depicts patently offensive representations, as measured against community standards, of:

 a. Ultimate sexual acts, normal or perverted, actual or simulated, or

 b. Masturbation, fellatio, cunnilingus, bestiality, excretory functions, or lewd exhibition of the genitals or genital area; or violent or destructive sexual acts, including but not limited to human or animal mutilation, dismemberment, rape or torture; and

3. The activity taken as a whole lacks serious literary, artistic, political, or scientific value.[5]

SMC 6.270.100(A)(2); (C)(1), (2), (3); (D)(1), (2), (3).

The police officers made arrests for violations of the

---

[5] The language of SMC 6.270.100(D) mirrors the language of *Miller v. California*, 413 U.S. 15, 23-24, 25, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973):

State statutes designed to regulate obscene materials must be carefully limited. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. . . .

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . . If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of the appellate courts to conduct an independent review of constitutional claims when necessary.

(Citations omitted.)

standards of conduct and did not consider obscenity or make arrests for expression. Pet. for Review at 3-4, 5. The City argues that arrests for conduct under this ordinance are allowed under *O'Day* and *Everett v. Heim*, 71 Wn. App. 392, 859 P.2d 55 (1993). Resp'ts' Br. at 17-18; Rep. Tr. (Dec. 16, 1997) at 116, 130. Both cases involved ordinances nearly identical to the City's with respect to the provisions at issue here; both ordinances contained standards of conduct and an exception for nonobscene dance. *See O'Day*, 109 Wn.2d at 799-800; *Heim*, 71 Wn. App. at 394. This court in *O'Day* upheld the constitutionality of the King County ordinance by construing it to restrict only conduct and unprotected expression. *O'Day*, 109 Wn.2d at 806. Similarly, under SMC 6.270.100, arrests may be made only for nonexpressive conduct and for unprotected expression. Utilizing that framework, the *O'Day* court agreed with the trial court that the performances engaged in by the defendants, evidently table dances or lap dances, constituted pure conduct unprotected by free expression guarantees. *O'Day*, 109 Wn.2d at 800 n.2, 803.

In a case decided last year, however, the Supreme Court stated clearly, for perhaps the first time,[6] that nude dancing is expressive conduct:

> Being "in a state of nudity" is not an inherently expressive condition. As we explained in *Barnes*, however, *nude dancing* of the type at issue here is *expressive conduct*, although we think that it falls only within the outer ambit of the First Amendment's protection. *See Barnes* v. *Glen Theatre, Inc.*, 501 U.S. at 565-566 (plurality opinion); *Schad* v. *Mount Ephraim*, 452 U.S. 61, 66 (1981).

*Pap's A.M.*, 529 U.S. at 289 (plurality opinion) (emphasis added). Although the Court's statement is qualified by the

---

[6] Despite the citation to previous cases, *Pap's A.M.* clarifies the issue. Any pronouncement made in the plurality opinion in *Barnes* is weakened by the fractured nature of that decision. *Pap's A.M.* itself does not have a majority opinion. However, Justice Souter states that he agrees with the analytical approach that the four-member plurality employs in deciding that case. *Pap's A.M.*, 529 U.S. at 310 (Souter, J., concurring in part, dissenting in part). Both *Barnes* (1991) and *Pap's A.M.* (2000) were decided subsequent to *O'Day*.

phrase "of the type at issue here," its citation to other cases indicates it sees no relevant legal difference between the kind of nude dancing at issue in *Pap's A.M.* and that in *Barnes* and *Schad.* Hence, nude dancing of various sorts is, according to the Court, expressive conduct. Moreover, according to Justice Scalia, the kind of nude dancing at issue in *Pap's A.M.* was lap dancing. *Pap's A.M.*, 529 U.S. at 308 (Scalia, J., concurring). After *Pap's A.M.*, nude dancing is afforded the protection due to expressive conduct.

In Kidder's and Silva's case, if the performers were engaged in nude dancing, their activities would fall under the category of expressive conduct, not pure conduct. There is ample evidence in the record to indicate that the performers were dancing; the detective present testified to that effect. Rep. Tr. (Dec. 11, 1997) at 10. Thus, the performers were engaged in expressive conduct which potentially falls under the exception for protected expression in SMC 6.270.100(C). Since SMC 6.270.100(C) says that "[t]his chapter shall not be construed to prohibit protected expression," before officers may make arrests for violation of the standards of conduct in SMC 6.270.100(A), the arresting officers or a judicial officer must make a determination, where expressive conduct is involved, that the expressive conduct is obscene as defined in SMC 6.270.100(D). In order to have probable cause to arrest Kidder and Silva, the City needed probable cause to believe that the dancers' expressive conduct was obscene and hence unprotected by the exception in .100(C).

The City concedes that "[t]here was absolutely no evidence at trial that any officer considered obscenity or made an arrest for expression." Pet. for Review at 5. However, that admission is not necessarily fatal to its claim that its officers had probable cause to make the arrests. " '[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."

*Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). The Supreme Court "described [*United States v.*] *Robinson*[, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)] as having established that 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (quoting *Scott v. United States*, 436 U.S. 128, 136, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978)). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* Even though no officer determined that the activities of the performers were obscene, the arrests are not invalidated as long as the facts and circumstances known to the arresting officer, viewed objectively, justify that action. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)). Here as long as the jury, viewing the facts and circumstances known to the arresting officer, determined that the performers' expressive conduct was obscene, they could go on to find that the officer had probable cause to make the arrests.

The City makes the further concession that the officer recording violations of the standard of conduct did not record any observations pertaining to obscenity. Pet. for Review at 3-4. The transcript of the audiotape made by the police detective contains observations related to violations of the standards of conduct but with hardly any observations related to expression at all. Opening Br. of Appellants at A-27 (Swanson Tape). He notes that the performers are on stage, but does not even say that they are dancing. *Id.* However, his trial testimony was more informative about the expressive features of the conduct. For example, he described the appearance of the stage and more of the dance

routine of the performers including their use of the walls, mirrors, and clothing. Rep. Tr. (Dec. 11, 1997) at 5-7. More importantly, the jury was able to view a videotape made by one of the dancers at the behest of her counsel, a videotape which purported to represent what the stage dancing at Rick's looks like. Rep. Tr. (Dec. 10, 1997) at 38, 39, 47. Although the dancer in the videotape is not involved in the present action, the detective testified that her dance moves were similar to the dance moves of the other performers. Rep. Tr. (Dec. 11, 1997) at 7-8. He did complain that the videotape did not contain the violations he saw on the day he recorded his observations. *Id.* at 15.

The jury appears to have significantly more information about the nature of the dances than did the magistrate about the content of the films at issue in *New York v. P.J. Video, Inc.*, 475 U.S. 868, 106 S. Ct. 1610, 89 L. Ed. 2d 871 (1986). In that case P.J. Video complained that the judge issuing the warrant to seize copies of their films did not have probable cause to believe that the movies were obscene. *Id.* at 869-70. The judge did not view the movies but issued the warrant on the basis of affidavits executed by an investigator who did view the works. *Id.* at 870. The information contained on each affidavit went only marginally further than the kind of comments made on the audiotape of the police officer in this case. *See id.* at 878-84. The Supreme Court found that the affidavits contained more than enough information to support a conclusion that the movies satisfied all three elements of the definition of obscenity, even the third one regarding literary, artistic, political, and scientific value, and hence that the warrant was supported by probable cause. *Id.* at 876-77. Here the transcript of the audiotape, the detective's testimony, and the videotape of the typical dance done on Rick's stage are sufficient "facts and circumstances" for a jury to be able to make a determination as to whether the dance was obscene, including whether the dance lacked artistic value.

But under this ordinance and in light of the facts of this case, a jury's finding that there was probable cause to make

arrests under the ordinance must be supported by a determination that a reasonable person would believe that the expression of the dancers was obscene and hence unprotected. Respondents contend that the trial court committed error when it declined to instruct the jury that consideration of obscenity was necessary to the determination of probable cause; they argue that the supplemental instruction to the jury was misleading and not a correct statement of the law. Opening Br. of Appellants at 58. "When reviewing a claim of error relating to jury instructions, the court must give consideration to the entire charge as a whole to determine whether the instruction is misleading or incorrectly states the law to the prejudice of the objecting party." *Maddox v. City of L.A.*, 792 F.2d 1408, 1412 (9th Cir. 1986). " 'An erroneous instruction is not otherwise reversible unless the court is "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." ' " *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1117 (7th Cir. 1983) (quoting *Johnson v. Bryant*, 671 F.2d 1276, 1280 (11th Cir. 1982) (quoting *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir. 1981))). " 'The question on appeal is not whether an instruction was faultless in every respect, but whether the jury, considering the instruction as a whole, was misled . . . . Thus, only in those cases where the reviewing court has a substantial doubt whether the jury was fairly guided in its deliberations should the judgment be disturbed.' " *Aero Int'l, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983) (quoting *Mid-Tex. Communications Sys. v. AT&T*, 615 F.2d 1372, 1390 n.16 (5th Cir. 1980)). "A new trial is the appropriate remedy for prejudicial errors in jury instructions." *Id.*

During its deliberations, the jury sent the trial judge this inquiry: "# 2. In regards to determining 'probable cause' must we consider obsenity [sic] e.g. can actions in section 'A' be allowed because of section 'C' in Municipal Code 6.270.100." Clerk's Papers at 878. The trial court replied, "2) In determining probable cause, an arresting officer

making an arrest for expression, must consider obscenity. In determining probable cause, an arresting officer making an arrest for conduct, need not consider obscenity." *Id.* The instruction incorrectly states the law because an officer making an arrest for conduct must consider obscenity if the conduct is expressive, as was the case here, and because a jury determining whether an officer had probable cause to make the arrests here must consider whether a reasonable person would believe that the expressive conduct was obscene. Given the fact that the City stressed that the arrests were made for conduct and not for expression (Rep. Tr. (Dec. 10, 1997) at 151-52; Rep. Tr. (Dec. 11, 1997) at 43-45; Rep. Tr. (Dec. 17, 1997) at 67, 70), it is likely that the instruction led the jurors to conclude that they did not need to make a determination that a reasonable person would believe that the dances were obscene in order to find that probable cause existed. If, as seems likely, the jurors so concluded, the exception in SMC 6.270.100(C) becomes a nullity, and the protection potentially afforded to Respondents under the ordinance was mistakenly denied.

Because of our substantial doubt that the jury was fairly guided and because we find the error prejudicial to Respondents, a new trial is the appropriate remedy. Respondents' claims that their Fourth Amendment rights were violated because the arresting officers did not have probable cause to make the arrests under the ordinance cannot be fairly evaluated unless the entire ordinance, including section C, is given effect.

 Because we decide this case for different reasons than did the Court of Appeals, we must address the issue of qualified immunity. The appeals court held that the arresting officers had qualified immunity because their conduct did not violate clearly established statutory or constitutional rights. *Furfaro*, 97 Wn. App. at 551-52. The Court of Appeals recognized that the warrant requirement upon which it decided Respondents' case was not clearly established. *Id.* at 551. Although we do not agree that the officers needed a warrant to make the arrests in this case, we

similarly recognize that *O'Day* provides a basis for believing that nude dancing may be considered pure conduct and not expressive conduct. That proposition is no longer true after *Pap's A.M.*, a case decided after the arrests were made. Because the arrests did not violate a clearly established constitutional right of which a reasonable person would have known, we affirm the Court of Appeals on the issue of qualified immunity and affirm the trial court's dismissal of the claims against the individual police defendants.

At the new trial all of the questions on the special verdict form may be considered by the jury except for the fourth question and questions arising from it: "Did the arresting officers subject either of the following plaintiffs to an unreasonable arrest procedure?" Clerk's Papers at 885. Respondents do not contest the jury's negative answer to that question.

Although we remand Respondents' claim for damages under 42 U.S.C. § 1983 for a new trial, we do so on grounds other than those found by the Court of Appeals. As a consequence of the different reasoning, the relief available is also different. Pursuant to RAP 13.7(b), this case is remanded to the Court of Appeals to consider the availability of injunctive or declaratory relief under the state constitution and issues left unresolved in this opinion.

## CONCLUSION

We affirm the judgment of the Court of Appeals but on different grounds. We do not agree that warrants were required to make the arrests under the requirements of the federal constitution in this case. Nevertheless, because we find that a jury instruction was erroneous and misleading, and that the error was prejudicial to respondents, we reverse the trial court's judgment of dismissal and remand this case to the Court of Appeals for further proceedings consistent with this opinion.

SMITH, MADSEN, IRELAND, and BRIDGE, JJ., concur.

SANDERS, J. (concurring) — I concur only with the majority's result for the reasons so well articulated by Judge Becker on behalf of the Court of Appeals. *See Furfaro v. City of Seattle*, 97 Wn. App. 537, 542-51, 984 P.2d 1055 (1999), *review granted*, 140 Wn.2d 1012, 5 P.3d 8 (2000).

In summary, when an activity enjoys legal protection unless obscene, an arrest warrant must be obtained from the judiciary. This is because obscenity determinations are ordinarily judicial ones, and, moreover, the alternative to an after-the-fact execution of a warrant is the prior restraint implicit in a midperformance arrest.

The majority's claimed distinction between the admitted necessity of a warrant to seize a videotape and the supposed propriety of a warrantless arrest of a performer in midperformance defies common sense.[7] As in the case of the warrantless seizure of a film, "Nothing prior to seizure afforded a magistrate an opportunity to 'focus searchingly on the question of obscenity.' " *Roaden v. Kentucky*, 413 U.S. 496, 506, 93 S. Ct. 2796, 2802, 37 L. Ed. 2d 757 (1973) (quoting *Heller v. New York*, 413 U.S. 483, 488-89, 93 S. Ct. 2789, 37 L. Ed. 2d 745 (1973)). The principle is the same in either case. But it is even more applicable to a live performance than a film because the film may be preserved and shown again but the performance is gone forever. *See also People v. Adais*, 114 Misc. 2d 773, 452 N.Y.S.2d 543, 545-46 (N.Y. Crim. Ct. 1982).

I would contend the issue is not whether the police

---

[7] *Cf.* majority at 370 n.2 (quoting *State v. Dixon*, 78 Wn.2d 796, 798, 479 P.2d 931 (1971)), " 'There is nothing unconstitutional about common sense.' " If anything, the reverse to the majority's view would be more nearly correct. "It is almost preposterous to believe that systems of censorship prohibited by our Constitution as to book publishers and film producers ought not be prohibited as to our dancers, actors and comedians." *People v. Adais*, 114 Misc. 2d 773, 452 N.Y.S.2d 543, 546 (N.Y. Crim. Ct. 1982).

386

guessed right, but rather whether the police should be in a position to guess at all.

ALEXANDER, C.J., and JOHNSON, J., concur with SANDERS, J.

After modification, further reconsideration denied December 5, 2001.